

CLERK OF COURT
LAFAYETTE PARISH. LA.

2019 OCT 16  PM 3: 24

DIV. ___ "J"

| | |
|---|---|
| JUSTIN and ANNA POLLOCK | FIFTHTENTH JUDICIAL DISTRICT COURT |
| VERSUS | DOCKET NO. 20196583 New Suit |
| D.R. HORTON, INC. - GULF COAST | LAFAYETTE, LOUISIANA |

## PETITION FOR DAMAGES

THE PETITION of JUSTIN POLLOCK and ANNA POLLOCK, (hereinafter "Pollocks") both domiciled in Lafayette parish, Louisiana, and both of the full age of majority, respectfully represent:

1.

Made Defendant in this case is **D.R. HORTON, INC. - GULF COAST**, (hereinafter "Defendants" a business dully authorized and commissioned in the state of Louisiana, Charter Number 36023080F, who may be served through its agent of service, CT CORPORATION SYSTEM 3867 PLAZA TOWER DR. BATON ROUGE, LA 70816.

2.

The Pollocks are the owner of a certain immovable property with the Pollocks' family home ("dwelling") on said lot bearing municipal address 213 Forest Drive-Lot 10 in Sugar Ridge Subdivision.

3.

On or about August 18, 2013, the Pollocks scheduled an appointment through a building company known as DR Horton to view a new residential construction located at 213 Forest Drive-Lot 10 in Sugar Ridge Subdivision.

4.

On or about August 19, 2013, the Pollocks placed a down payment on their new residential construction home built by Defendants.

5.

A home inspection was performed on the residential construction home before the closing on the sale of the house by the Pollocks.

INDEXED

EXHIBIT
1

6.

On or about September 23, 2013, the Pollocks closed on the sale of the residential home.

7.

On or about September 26, 2013, the Pollocks moved into their new family home built by Defendants.

8.

On or about October 19, 2013, the Pollocks submitted a 30-day punch list to Defendants with remedial work that needed reparations after the completion of the Pollock's home.

9.

On or about January 13, 2014, the Pollocks met with Justin Kaliszeski, a representative of Defendant.

10.

Mr. Kaliszeski showed the Pollocks the existence of severe mold within the Pollocks' family home.

11.

The 30-day punch list submitted to Defendant almost 3 months prior had not commenced as of January 2014.

12.

On or about July 19, 2014, the Pollocks filed a warranty claim with the Defendant for leaking windows in the dining room and in the master bedroom upstairs directly resulting in water damage to the drywall and to the formation of mold in the Pollocks' family home.

13.

On or about July 25, 2014, Defendant attempted to remove drywall in the dining room and the upstairs bedroom.

14.

Defendant informed the Pollocks that the drywall was saturated, and that mold was located inside of the wall resulting from the Defendants improper installation of the windows.

15.

Defendant further informed the Pollocks that the windows needed to be replaced due to the leakage of water causing mold to form inside their family home.

16.

On or about September 20, 2014, the Pollocks filed a subsequent claim through Defendant's website to repair the water leaking window and the water damaged drywall, which Defendant still did not repair from the first claim the Pollocks filed.

17.

On or about September 22, 2014, the Pollocks wrote a letter to Defendant inquiring about the water leaking from windows and water damaged drywall not being fixed.

18.

On or about October 5, 2014, the Pollocks received correspondence from Defendant explaining that the windows had not arrived.

19.

On or about October 6, 2014, the remedial work from the 30-day punch list submitted on or about January 13, 2014 began more than 9 months after submission.

20.

On or about October 10, 2014, Brian Abernathy from Anderson windows visited the Pollock's family home to inspect the defects in the windows.

21.

On or about October 15, 2014, the Defendant initiated installation of the second set of windows inside the Pollock's family home.

22.

On or about November 11, 2014, the restoration of tile and carpet in the Pollock's family home were completed.

23.

On or about February 23, 2015, the upstairs shower drain, which was improperly installed by the Defendant, began leaking through the kitchen ceiling and light fixtures resulting in a concentration of mold to form on the ceiling of the Pollocks' family home.

24.

On or about July 7, 2015, the Pollocks submitted a warranty claim to fix the following:

1) Water leakage from the dining room window;

2) Mold forming on the walls resulting from water leaking through and from the windows directly caused by Defendants improper installation of the windows;

3) Mold forming on the ceiling resulting from the water leakage from the drain upstairs directly caused by the improper installation of shower drains by Defendant;

4) Mold forming on the HVAC vents; and

5) Water leaking from the back door.

25.

On or about July 20, 2015, Defendant commenced on tearing out the drywall, which was saturated with water and contained mold from the dining room window which directly resulted from Defendants improper installation of the dining room window in Pollock's family home.

26.

On or about September 21, 2015, Defendant had the stucco removed and scaffolds were set up for work; however, the new windows still were not delivered to the Pollock's family home, allowing water to continue to leak through and from the windows, which in turn allowed a higher concentration of mold to form.

27.

On or about October 1, 2015, the Pollock's rushed their daughter to Women's & Children emergency room due to their daughter running 104-degree fever from a respiratory illness.

28.

On or about October 5, 2015, Women's and Children hospital released the Pollock's daughter after 4 days in the hospital.

29.

On or about October 7, 2015, Defendant installed drywall along with new windows in the following rooms:

1) Upstairs bedroom window;

2) Dining room windows; and

3) Foyer windows.

The foyer window did not require a replacement.

30.

On New Year's Eve, the foyer window(s) started leaking and water was coming from behind the paint on the walls, seeping out different areas of the walls, including the light switches.

31.

On or about May 19, 2016, the Pollocks filed an additional warranty claim due to the following defects found in their home:

1) Mold around windows due to the improper installation of the windows causing a constant water leakage into the drywall;

2) Mold around vents;

3) Water leaking from windows inside due to the improper installation of the windows directly causing water leakage into the drywall, which eventually form a concentration of mold;

4) Water coming out of light switches.

32.

On or about May 23, 2016, the Pollocks filed a second warranty claim due to Defendant's failure to respond to the first Warranty claim.

33.

On or about August 12, 2016, a third warranty claim was filed due to water pooling in the following areas:

1) In the garage;

2) On the dining room floor;

3) Coming from the light fixtures.

34.

On or about August 12, 2016, Mr. Pollock found additional defects in or around the Pollack's home, which include the following:

1) Leakage in the roof above the front door of the Pollocks' family home;

2) Water running across the beam into dining room of the Pollocks' family home;

3) A gap where the roof meets the wall, which was large enough to fit a finger through.

4/14/2021

35.

On or about September 10, 2016, Mr. Pollock sent emails to Naomi Thibodeaux and Joanne Carroll asking for help from Defendant.

36.

On or about September 14, 2016, Naomi Thibodeaux responded to Mr. Pollock asserting that she created the work orders to fix Mr. Pollock's family home.

37.

On or about September 22, 2016, the Pollocks observed discernable mold coming through the walls of the Pollock's family home from the failures of the Defendant.

38.

On or about September 30, 2016, Serge Renoux, a new warranty superintendent for Defendant, went to assess the defects in the Pollocks' family home.

39.

On or about October 4, 2016, Defendant commenced work on the following defects in the house:

1) Defendant cut the dining room walls open;

2) Defendant cut the bedroom walls open;

3) Defendant removed the stucco from the Pollocks' family home;

4) Defendant improperly installed the upstairs bedroom window in the Pollocks' family home;

5) Defendant improperly installed the dining room window in the Pollocks' family home; and

6) Defendant improperly installed the foyer window in the Pollocks' family home.

40.

On or about November 5, 2016, a carpenter from Defendant went to the Pollocks' home to hang crown molding and baseboards.

41.

The carpenter dropped a hammer on the tile causing the tile to break in the Pollocks' family home.

42.

On or about December 8, 2016, Mr. Pollock observed water leaking in the wall triggering the paint to form bubbles on the wall in the Pollocks' family home directly resulting from water leaking from the foyer window that never needed replacement in the first place, which was cause from Defendants improperly installing the foyer window.

43.

Mr. Pollock attempted to call Serge Renoux immediately after discovering the bubbles on the wall, however, Mr. Pollock received no response.

44.

On or about December 31, 2016, Mr. Pollock observed water pouring in from the light switches, which caused a short in the wall circuit directly resulting from water leakage from the foyer window, due to the improper installation of the window by Defendant.

45.

Mr. Pollock called Serge Renoux once again, in which Mr. Renoux attempted to repair the water leakage from the light switch with a cheap remedy by using aerosol Flex Seal.

46.

On or about March 1, 2017, the painters arrived almost two months after the discovery of the bubbles on the wall to begin painting the Pollocks' family home.

47.

The painters painted the family home the wrong color, which led Mr. Pollock to contact Thomas Guillory, who was the Defendant's Supervisor, about the incident.

48.

During this time, the wall under the leaking Foyer window was cut open, which led to a finding of mold once again directly resulting from the water leakage from the foyer window that never needed to be replaced in the first place.

49.

On or about October 1, 2018, the Pollocks were left no choice to file an additional warranty claim due to the following areas where windows were leaking in fear of additional mold growth:

1) In the dining room;

2) In the upstairs bedroom;

3) In the foyer.

50.

On or about October 3, 2018, the Pollocks' daughter went to the doctor due to a severe cough for almost a month in which the doctor had to give the daughter anti-biotics.

51.

On or about October 19, 2018, Guarantee Restoration cut open the walls in the dining room and the upstairs bedroom which led to the finding of rotten wood and mold resulting from the water leakage of the windows that were improperly installed by Defendants inside the Pollocks' family home.

52.

On or about October 22, 2018, Ercoli's Inspection & Environmental conducted tests that resulted in the following data.

**Client: Ercoli's Inspection & Environmental**
Contact: Steve Ercoli
Project: 213 Forest Grove Dr
Date of Sampling: 10-17-2018
Date of Receipt: 10-18-2018
Date of Report: 10-22-2018

**MoldREPORT**
EMLab P & K
1501 West Knudsen Drive, Phoenix, AZ 85027
(800) 651-4802 Fax (623) 780-7695

### Summary of Sample Analysis Results

**Do not take any action based on the results of this report until you have read the entire report.**

Air Sample Summary:

The MoldSCORE™ was in the HIGH range for the following area(s): 1, 2, 3, 5, 6. A high MoldSCORE™ indicates a high likelihood of mold growth in the area tested at the time of the inspection. If mold growth is in fact present, it should be cleaned or physically removed using appropriate controls and precautions by a trained professional and any associated water source that led to the problem should also be corrected.

The MoldSCORE™ was in the MODERATE range for the following area(s): 4. A moderate MoldSCORE™ means that the results are inconclusive, and suggests that a more detailed inspection by a trained professional may make sense if there are any other reasons to believe that mold growth could be a problem in this room.

Please see the sections titled "Detailed Results of the Air Sample Analysis" and "Understanding Your Air Sample Analysis Results" for important additional information.

| Location | MoldSCORE™ | | | Exposure Level | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Lower | Higher | Mold Score | Lower | | | Higher | Location spores/m³ | Outside spores/m³ |
| 1: Bed 1/Baby<br>* see p. 4 for details | <110 | 200 300 | 380 | <200 | 1K | 10K | >30K | 16,000 | 11,000 |
| 2: Bed 2/Spencer<br>* see p. 5 for details | <110 | 200 300 | 300 | <200 | 1K | 10K | >30K | 3,400 | 11,000 |
| 3: Bed 3<br>* see p. 6 for details | <110 | 200 300 | 380 | <200 | 1K | 10K | >30K | 15,000 | 11,000 |
| 4: Master Bed<br>* see p. 7 for details | <110 | 200 300 | 218 | <200 | 1K | 10K | >30K | 940 | 11,000 |
| 5: Living<br>* see p. 8 for details | <110 | 200 300 | | <200 | 1K | 10K | >30K | 1,600 | 11,000 |
| 6: Kitchen/Dining<br>* see p. 9 for details | <110 | 200 300 | 300 | <200 | 1K | 10K | >30K | 19,000 | 11,000 |

53.

On or about October 22, 2018, the Pollacks' daughter still had a severe cough and their Doctor diagnosed her with a respiratory illness.

54.

The Doctor stated that the Pollacks' daughter's respiratory illness directly resulted from mold exposure inside of the Pollacks' family home.

55.

This mold exposure inside of the Pollocks' family home resulted from the improper installation of windows, drains, etc., which caused leakage into the walls of the home where mold began to form on several occasion.

56.

After countless attempts to have Defendant repair the leakage and the house all together, the Pollocks were left with no other alternative other then to file this suit against Defendant in fear of their children health diminishing.

57.

Venue is proper under Code of Civil Procedure, articles 74 and 80, in that this action involves a tort and breach of contract pertaining to the Pollocks' family home, which is within the City of Youngsville, in the Parish of Lafayette

. **WHEREFORE,** Plaintiffs prays that Defendants be duly cited to appear and answer this Petition; that they be served with a copy of the same; and that after due proceedings are had, there be judgment in favor of Plaintiffs and against Defendants, and awarding an amount sufficient to compensate Plaintiffs for all damages Plaintiffs has sustained as a result of the acts and/or omissions of Defendants complained of herein, and for all other damages sustained, to be shown at trial, which are a consequence of Defendant's complained of actions and/or inactions, for all cost of these proceedings, for all general and equitable relief, for all attorney fees and that all expert witness fees be taxed as costs of court.

RESPECTFULLY SUBMITTED,

LAW OFFICE OF LANCE BEAL, LLC.

BY: _____

LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
405 W. Main Street Suite 108
Lafayette, LA 70501
Tele: (337) 991-6263
Fax: (337) 534-0310
Attorneys for Plaintiffs

**PLEASE SERVE:**

**D R HORTON**
**Through its agent of service of process**
**CT Corporation System**
**3867 Plaza Tower Drive**
**Baton Rouge, LA 70816**

FILED THIS 16
DAY OF October, 2019
Deputy Clerk of Court



57541112G

| JUSTIN and ANNA POLLOCK | FIFTHTENTH JUDICIAL DISTRICT COURT |
|---|---|
| VERSUS | DOCKET NO. 2019 65583 J. |
| D.R. HORTON, INC. - GULF COAST | LAFAYETTE, LOUISIANA |

**VERIFICATION**

STATE OF LOUISIANA

PARISH OF LAFAYETTE

    BEFORE ME, the undersigned authority, personally came and appeared:

    **JUSTIN POLLOCK**, who, after being sworn did depose and say that he has read the petition and all that of the allegations contained of fact contained in it are true and correct.

_____
JUSTIN POLLOCK

    SWORN AND SUBSCRIBED TO BEFORE ME THIS ___16th___ day of October 2019.

_____
LANCE C. BEAL
OR
MATTHEW H. HERNANDEZ

LANCE C. BEAL
STATE OF LOUISIANA
PARISH OF LAFAYETTE
Notary ID: 156856
Bar Roll Number: 38131
1019 COOLIDGE BLVD.
LAFAYETTE, LA 70505
COMMISSION EXPIRES UPON DEATH
OFFICE: (337) 991- 6263

FILED THIS ___16___
DAY OF ___October___, 20_19_
_____
Deputy Clerk of Court



LAFPC.CV.57681561
cc_adblanchard

Ordered by Atty.: LANCE C. BEAL .

# CITATION

JUSTIN POLLOCK, ET AL

VS

D R HORTON INC GULF COAST, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20196583 J

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   D R HORTON
      THROUGH ITS AGENT OF SERVICE OF PROCESS
      CT CORPORATION SYSTEM
      3867 PLAZA TOWER DRIVE
      BATON ROUGE, LA 70816

of the Parish of E BATON ROUGE

    You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
    Witness the Honorable Judges of said Court, this OCTOBER 17, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20____     TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____     MILEAGE $_____     TOTAL $_____
DEPUTY _____

Lafayette Parish Clerk of Court
Filed This Day

NOV 0 5 2019

Deputy Clerk of Court

JUSTIN AND ANNA POLLOCK                    SUIT NO. 2019-6583 J

VERSUS                                     15TH JUDICIAL DISTRICT COURT

                                           PARISH OF LAFAYETTE

D.R. HORTON, INC. - GULF COAST             STATE OF LOUISIANA

## DEFENDANT D.R. HORTON, INC – GULF COAST PEREMPTORY EXCEPTION(S) OF PRESCRIPTION/PEREMPTION

NOW COMES, D.R. Horton, Inc – Gulf Coast, ("Defendant" or "D.R. Horton"), and for the sole purpose of excepting to the petition of Justin and Anna Pollock, ("Pollocks" or "Plaintiffs"), and pursuant to La. C.C.P. art. 927, who respectfully submits this *Peremptory Exception(s) of Prescription/Peremption* and accompanying memorandum as follows:

1.

The Defendant constructed a new residence (the "House") for the Plaintiffs whereby the Plaintiffs moved in and acquired title on or about September 23, 2013.

2.

Since this was a new residential construction, the Plaintiffs' claims are governed by the New Home Warranty Act. (the "Act" - La. R.S. 9:3141, et seq).

3.

The Act provides the *exclusive* remedies and warranties between a builder and an owner related to the construction of a new home. La. R.S. 9:3150.

3.

Further, the Act provides *peremptive* warranty periods ranging from one to five years, depending on the nature of the alleged defect. La. R.S. 9:3146.

4.

Plaintiff filed suit on October 16, 2019, over six years after acquiring title to the home, alleging, *inter-alia*, leaking windows.

5.

Based on the peremptory periods set forth in the Act, any defective claim rights of the Plaintiff had to be brought, at the latest, five years from transfer of title and are now extinguished.

1

16-Dec-2019  15:03    Fax                Received:12253416941              Dec 16 2019 03:06pm   P004
                                                                          12253416941          p.4

7.

In the event somehow the Act was determined not to apply, La. R.S. 9:2772 also establishes a maximum five-year peremptory period for deficiencies in the construction of immovables, either *ex contractu* and/or *ex delicto*, commencing upon occupancy by the Owner.

8.

Under La. R.S. 9:2772, the Plaintiffs' construction defect claims in their petition would also have prescribed and should be dismissed with prejudice.

**WHEREFORE**, Defendant, D.R. Horton, Inc. – Gulf Coast, prays that the exceptions herein be deemed sufficient and that after hearing, the exceptions be maintained, and that the petition of the Plaintiffs' be dismissed as having prescribed, all at the expense of Justin and Anna Pollack, and with prejudice.

Respectfully submitted,

LAPEROUSE, APLC

By: _____

Edward J. Laperouse, II #29310
Christopher M. Patin #37963
Trenton Bell #37577
2051 Silverside Drive, Suite 120
Baton Rouge, Louisiana 70808
Telephone: (225) 416-0614
Facsimile: (225) 341-8941
**ATTORNEYS FOR**
**D.R. Horton, Inc. - Gulf Coast**

2

FAX FILED THIS ___16___
DAY OF _Dec_ ,20_19_
_____
Deputy Clerk of Court

2/2

16-Dec-2019  15:04    Fax          Received:12253418941          Dec 16 2019 03:10pm    P005
                                                              12253418941              p.5

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing *Peremptory(s) of Prescription/Peremption* has been served upon the following counsel of record via facsimile, first class U.S. mail (properly addressed and prepaid), or electronic mail to:

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

Baton Rouge, Louisiana, this _16th_ day of December, 2019.

Christopher M. Patin

FAX FILED THIS __16__
DAY OF __Dec__ ,20 _19_
__Martina Rician__
Deputy Clerk of Court

3

4/14/2024

16-Dec-2019  15:04   Fax          Received: 12253410941                    Dec 16 2018 03:10pm    P006
                                                                          12253410941              p.6

JUSTIN AND ANNA POLLOCK                    SUIT NO. 2019-6583 J

VERSUS                                     15TH JUDICIAL DISTRICT COURT

                                           PARISH OF LAFAYETTE

D.R. HORTON, INC. - GULF COAST             STATE OF LOUISIANA

## DEFENDANT D.R. HORTON, INC – GULF COAST MEMORANDUM IN SUPPORT OF PEREMPTORY EXCEPTION(S) OF PRESCRIPTION/PEREMPTION

MAY IT PLEASE THE COURT:

Defendant, D.R. Horton, Inc. – Gulf Coast ("D.R. Horton"), submits this memorandum in support of its peremptory exception filed in the above captioned matter.

**1.    Introduction**

On or about August 13, 2013, Justin and Anna Pollock, (the "Pollocks" or "Plaintiffs"), entered into an Agreement to Purchase Real Estate, (the "Agreement") with D.R. Horton for the purchase of a new single-family residence located at 213 Forest Drive within the city of Youngsville in Lafayette Parish, Louisiana (the "House"). The substantial terms of this Agreement were for D.R. Horton to construct and sell the future completed residence to Pollocks in exchange for a price of $254,900 to be paid at closing. On or about September 23, 2013, the Pollocks took title to the property and moved into the House built by D.R. Horton. The Plaintiffs' suit, which alleges damages related to defects in the construction of the House, was filed on October 16, 2019—more than six (6) years after taking title to and occupying the House.

Under the facts plead by Plaintiffs in their petition, the New Home Warranty Act, La. R.S. 3144 *et. seq.*, ("the Act") provides the *exclusive* remedy concerning the alleged defects in the House. To that end, the Act provides the peremptive periods by which a plaintiff must bring a suit concerning such alleged defects. Under the Act, no claim for defects may be brought, at the absolute latest, more than five (5) years from the date of occupancy or transfer of title, whichever occurs first. Thus, at the latest, peremption ran on or about October 23, 2018. Furthermore, under the Act, the Plaintiffs have no claims whatsoever for the nature, scope and types of damages asserted.

In any event, and/or in the alternative, even if the Act somehow did not apply to the Plaintiffs' claims, La. R.S. 9:2772 prohibits a claim for construction defects from being instituted more than five (5) years after occupancy of the immovable by the owner.

16-Dec-2019  15:05    Fax                    Received:12253419941                    Dec 16 2019 03:10pm    P007
                                                                                     12253419941           p. 7

2.    Law and Argument

    A.    Peremptory Exception of Prescription/Peremption

    When a petition is prescribed on its face, plaintiff bears the burden to show that prescription has not in fact run, was suspended or was interrupted. *Spott v. Otis Elevator Co.*, 601 So. 2d 1355 (La. 1992). The purpose of prescription is to afford defendant with security of mind and to bar stale claims. *Merrit v. Administrators of Tulane Educational Fund*, 94-0816 (La. App. 4 Cir. 7/8/94), 639 So. 2d 881.

    Peremption is a period of time fixed by law for the existence of a right. (La. Civ. Code 3458). Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. *Id.* A homeowner is required to bring an action against a builder within the peremptive periods set forth in the New Home Warranty Act. (see, *Robinson v. Papania*, 2015-1354 (La. App. 1 Cir. 10/31/16); 207 So. 3d 566, 580).

    **1.    The New Home Warranty Act Provides the Exclusive Remedy against D.R. Horton and Perempts This Claim**

    The Plaintiffs' claims against D.R. Horton directly stem from alleged defects in the construction of their House. The New Home Warranty Act provides the exclusive remedy for claims by owners of new homes against a builder for such damages alleged by Plaintiffs. The Act provides as follows:

> **La. R.S. 9:3150:**
> This Chapter provides the *exclusive* remedies, warranties, and peremptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply. Nothing herein shall be construed as affecting or limiting any warranty of title to land or improvements.

    It is uncontested that the Plaintiffs are the original owners of the subject House. It is also uncontested that defendant was the builder responsible for building the home. Under the Act, builder and owner are defined as follows:

> **La. R.S. 9:3143:**
> For purposes of this Chapter the following words, phrases, and terms shall be defined and construed as follows:
>
> (1) "Builder" means any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence. A person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or any addition thereto, is a "builder", whether or not the consumer purchased the underlying real estate with the home.
>
> (6) "Owner" means the initial purchaser of a home and any of his successors in title, heirs, invitees, or assigns to a home during the time the warranties provided under this Chapter are in effect.

The specific warranties set forth in the Act are as follows:

La. R.S. 9:3144:
A. Subject to the exclusions provided in Subsection B of this Section, every builder warrants the following to the *owner:*

(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

(3) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

The "warranty commencement date" under the Act is the date title transfers or the date of occupancy, whichever occurs first. See La. R.S. 9:3143(7). The Act establishes the following rule regarding time for filing suit on a warranty claim:

La. R.S. 9:3146:

Any action to enforce any warranty provided in this Chapter shall be subject to a peremptive period of thirty days after the expiration of the appropriate time period provided in R.S. 9:3144.

While D.R. Horton denies that it caused any of the damages alleged by the Plaintiffs arising out of purported defects in the House, the absolute latest the Plaintiffs could have filed suit on *any claims* under the Act would have been October 23, 2018—five years and thirty days after the warranty commencement date.[1] This suit was not filed until October 19, 2019. Thus, the Plaintiffs' claims are perempted.

2.    Alternatively, and in any event, La. R.S. 9:2722 would perempt the Plaintiff's claims.

Even if the Act were somehow determined not to apply to the Plaintiffs' claims against D.R. Horton—an assertion which is expressly denied—the claims would nevertheless be proscribed/perempted. Louisiana Revised Statute 9:2772 provides a peremptive period of five

---

[1] Incidentally, a suit on Plaintiffs' claims related to alleged "leaking and/or defective windows" was required to be brought within one year and thirty days from the warranty commencement date.  (La. R.S. 9:3144(A)(1)).

(5) years by which any claim "ex contractu, ex delicto, or otherwise" may be brought against a contractor arising out of the construction of a building.

La. R.S. 9:2772 provides, in pertinent part:

> A. No action, whether ex contractu, ex delicto, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought against any person performing or furnishing land surveying services, as such term is defined in R.S. 37:682, including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9):

> (1)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

> (b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

Again, the Pollocks took possession of the House on September 23, 2013 - more than six (6) years prior to filing suit. Thus, their claims would further be perempted against D.R. Horton, the builder of the House, by La. R.S. 9:2772.

For the foregoing reasons, Plaintiffs' petition must be dismissed on the basis of peremption.

### 3.    Conclusion

As the New Home Warranty Act provides the exclusive remedy as to the Plaintiffs' claims asserted in its petition, and as they failed to file suit on such claims within the time prescribed by the Act, their claims must be dismissed due to peremption. In addition, and/or in the alternative, Plaintiffs' claims are perempted by La. R.S. 9:2772.

Respectfully submitted,

LAPEROUSE, APLC

By: _____

Edward J. Laperouse, II #29310
Trenton Bell #37577
Christopher M. Patin #37963
2051 Silverside Drive, Suite 120
Baton Rouge, Louisiana 70808
Telephone:  (225) 416-0614
Facsimile:  (225) 341-8941
**ATTORNEYS FOR**
**D.R. Horton, Inc. - Gulf Coast**

FAX FILED THIS 16

DAY OF DEC, 2019

_____
Deputy Clerk of Court

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing *Memorandum in Support of the Peremptory Exception of Prescription/Peremption* has been served upon the following counsel of record via facsimile, first class U.S. mail (properly addressed and prepaid), or electronic mail to:

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

Baton Rouge, Louisiana, this _16th_ day of December, 2019.

_____
Christopher M. Patin

FAX FILED THIS _16_
DAY OF _Dec_ ,20_19_
X_____
Deputy Clerk of Court



JUSTIN AND ANNA POLLOCK

VERSUS

D.R. HORTON, INC. - GULF COAST

SUIT NO. 2019-6583 J

15TH JUDICIAL DISTRICT COURT

PARISH OF LAFAYETTE

STATE OF LOUISIANA

## RULE TO SHOW CAUSE

Considering the foregoing *Peremptory Exception of Peremption/Prescription* filed on behalf of the Defendant, D.R. Horton, Inc. — Gulf Coast:

IT IS ORDERED, that Justin and Anna Pollock show cause on 10 day of February 2020 at 10:00 o'clock ____ .m, why *Peremptory Exception of Peremption/Prescription* should not be granted.

Signed this 20 day of Dec , 2019, at Lafayette , Louisiana

15ᵗʰ Judicial District Judge

Laurie A. Hulin, District Judge
Fifteenth Judicial District

PLEASE SERVE:

Justin and Anna Pollock
213 Forest Grove Dr.
Youngsville, La. 70592

PLEASE NOTIFY:

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

FILED THIS 20
DAY OF ____ , 20 19
Deputy Clerk of Court

STATE OF LOUISIANA PARISH OF LAFAYETTE
I hereby certify that a certified copy of this judgment/order has been mailed/served on all parties this 23 day of Dec , 20 19
Deputy Clerk of Court

w: Lance Beal
Christophe Patin
Serve: Justin Pollock
Anna Pollock

1



| | |
|---|---|
| JUSTIN and ANNA POLLOCK | FIFTH TENTH JUDICIAL DISTRICT |
| VERSUS | DOCKET NO. 2019-6583 "J" |
| D.R. HORTON, INC.-GULF COAST | LAFAYETTE, LOUISIANA |

## UNOPPOSED MOTION AND ORDER FOR LEAVE OF COURT TO AMEND PLAINTIFF'S PETITION

Pursuant to Articles 1033 and 1151 of the Louisiana Code of Civil Procedure **JUSTIN POLLOCK** and **ANNA POLLOCK** through undersigned counsel, respectfully moves this **HONORABLE COURT** for leave to file the attached **Amended** Petition on the grounds relating to a contract entered by **D.R. HORTON, INC.-GULF COAST** that is in all material respects the same as the contract at issue in this case.

Respectfully submitted,

Beal & Hernandez, L.L.P.

FILED THIS ___27___
DAY OF __JAN__ , 20 _20_
M Clotiaup
Deputy Clerk of Court

BY: _____
LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
600 JEFFERSON ST. SUITE 810
LAFAYETTE, LA 70501
TELEPHONE: (337)-991-6263
FACSIMILE: (337)-534-0310
*Attorneys for Plaintiffs*

### ORDER

Considering the preceding motion,

IT IS ORDERED that Justin and Anna Pollock are granted leave of Court to file its **Amended** Petition and for relief.

Lafayette Parish, Louisiana

On this __31st__ day of __January__ 2020.

FILED THIS __31__
DAY OF __JAN__ , 20 _20_
M Clotiaup
Deputy Clerk of Court

Honorable Judge Laurie Hulin

2020 JAN 27 AM 11: 20
CLERK OF COURT
LAFAYETTE PARISH, LA.



JUSTIN and ANNA POLLOCK                    FIFHTENTH JUDICIAL DISTRICT

VERSUS                                     DOCKET NO. C-2019-6583 "J"

D.R. HORTON, INC-GULF COAST                LAFAYETTE, LOUISIANA

### FIRST AMENDING PETITION

The first amending petition of Justin and Anna Pollock, husband and wife domiciled in Lafayette Parish, who adopting by reference and confirming all allegations contained in their original petition as though fully reproduced herein with respect to represent and amend their original petition with the consent of opposing Counsel as follows:

I.

By adding the following additional Paragraphs: 58 through 64.

58.

On or about October 2, 2018, the Pollocks and Defendant entered a new oral contract to repair and replace the windows in the Pollocks' home after the preemptive period from the New Homes Warranty act ran.

59.

Sometime between October 2, 2018 and October 17, 2018, Defendant subcontracted Guarantee Restoration to repair all the defects in the Pollocks' residential home.

60.

On or about October 18, 2018, Guarantee Restoration arrived at the Pollocks' home where the commencement of the reparations to the house initiated.

61.

On or about October 19, 2018, Guarantee Restoration began cutting open the walls in the dining room and upstairs bedroom where there was rotted wood and mold found at that time.

1/4

4/14/2024

62.

On or about October 22, 2018, Guarantee Restoration cut drywall out around the front door and garage door, dining room window and their daughter's bedroom.

63.

On November 1, 2018, the Pollocks moved into a hotel, which was paid for by Defendant.

64.

The Pollocks stayed in a hotel until on or about December 23, 2018, while Guarantee Restoration completed the mold remediation; D.R. Horton attempted to repair the frame of the front of the house; replaced windows; installed new drywall; and Bell Mechanical replaced A/C duck work and installed a new filtration system.

II.

By adding the following Paragraph 65 through 72.

65.

On or about July 14, 2019, the Pollocks noticed water seeping into the house from the sides of the windows in the dining room windows and upstairs bedroom, which was previously repaired by Defendant.

66.

Additionally, On or about July 14, 2019, called to come and observe the defects.

67.

On or about July 19, 2019, Defendant went to observe the defects that were found by the Pollocks where they advised the Pollocks to file a warranty claim.

68.

Additionally, on or about July 19, 2019, Defendant specifically told the Pollocks that they would fix the problem.

69.

On or about July 21, 2019, a warranty claim was filed by the Pollocks for the dining room and upstairs bedroom to fix the leakage.

70.

On or about August 15, 2019, Defendant arrived to the Pollocks home where they cut the wall open and found evidence of leakage in the Pollocks' home.

71.

On or about August 15, 2019, Defendant installed new windows within the Pollocks' home.

72.

The new windows that were put in place by the Defendant were improperly installed triggering water leakage into the Pollocks' home once again.

III.

By amending the prayer of their original petition to read as follows:

WHEREFORE, Plaintiffs adopt by reference and confirm all of the allegations contained in their original petition as though fully reproduced herein, do further pray that Defendant, D.R. HORTON, INC.-GULF COAST be served with a copy of the foregoing amended petition and after all proceedings had that there be judgment herein favor of the Plaintiffs and against the Defendants, rescinding rescission of the contract and awarding damages in the form of the cost of the removal and replacement of the windows and all other damages as may be determined at trial, all cost of these proceedings including plaintiff's reasonable attorney fees.

Respectfully Submitted,

Law Office of Beal & Hernandez, L.L.P.

BY: _____

LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
JONATHAN D. SONGY (#38899)
BEAL & HERNANDEZ, LLP
600 JEFFERSON ST., SUITE 810
TELE: (337)-991-6263
FACSIILE: (337)-534-0310

Clerk, Please Serve:
D.R. Horton, Gulf Coast
Through their Attys.
Laperouse, A PLC
2051 Silverside Dr.
Suite 120
Baton Rouge, LA 70808

FILED THIS ___31___
DAY OF ___JAN___, 20 20
M Crotrauf
Deputy Clerk of Court


98656935

**JUSTIN and ANNA POLLOCK**     **FIFTHTENTH JUDICIAL DISTRICT COURT**

**VERSUS**     **DOCKET NO.** 20196583

**D.R. HORTON, INC. - GULF COAST**     **LAFAYETTE, LOUISIANA**

<u>**VERIFICATION**</u>

**STATE OF LOUISIANA**

**PARISH OF LAFAYETTE**

      BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified in and for the above named state and parish, personally came and appeared:

**JUSTIN POLLOCK**

who after being first duly sworn, did depose and declare that:

      He is the Petitioner in the above and foregoing First Amending Petition; that he has read all of the allegations contained therein and declares and states that they are true to the best of his knowledge, information and belief.

             **JUSTIN POLLOCK**

      SWORN TO AND SUBSCRIBED before me, Notary, on this the 27th day of January, 2020, at Lafayette, Lafayette Parish, Louisiana.

            **NOTARY PUBLIC**
            **LAFAYETTE PARISH, LOUISIANA**

Lance C. Beal
State of Louisiana
Parish of Lafayette
Notary ID # 156866
Bar Roll #36131
My Commission expires with life

FILED THIS 31
DAY OF JAN , 20 20
_____
Deputy Clerk of Court

Ordered by Atty.: LANCE BEAL

LAFPC.CV.58928920
cc_mjcloteaux

# CITATION
## (SUPPLEMENTAL & AMENDING)

JUSTIN POLLOCK, ET AL

VS

D R HORTON INC GULF COAST, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20196583 J

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:    DR HORTON GULF COAST
       THROUGH THEIR ATTYS
       LAPEROUSE A PLC
       2051 SILVERSIDE DR
       SUITE 120
       BATON ROUGE, LA  70808



of the Parish of EAST BATON ROUGE

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of our said Court, this FEBRUARY 6, 2020.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
UNOPPOSED MOTION AND ORDER FOR LEAVE OF COURT TO AMEND PLAINTIFF'S
PETITION, FIRST AMENDING PETITION & VERIFICATION

Lafayette Parish Clerk of Court
Filed This Day

MAR 1 0 2020

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

Martina O'Reaux
Deputy Clerk of Court

DATE SERVED: _____, 20___    TIME: _____

SERVED: _____

PERSONAL ( ) _____    service on the named party

DOMICILIARY ( ) ON _____    by tendering a copy of this document on this day

UNABLE TO LOCATE    MOVED ( )    NO SUCH ADDRESS ( )

OTHER REASON: _____    FEB 2 4 2020

RECEIVED TOO LATE FOR SERVICE  ( )    UTS/MOVED, NO LONGER AT THIS ADDRESS

SERVICE OF WITHIN PAPERS

COSTS FEE $ _____    MILEAGE $ _____    TOTAL $    R. Landry  0675

DEPUTY _____    Deputy Sheriff, Parish of East Baton Rouge, LA

1/1

4/14/2021

2-Mar-2020  15:58   Fax        Received 12253418941        Mar  2 2020 04:05pm    P003
                                                           12253418941          p.3

59096529

JUSTIN AND ANNA POLLOCK          SUIT NO. 2019-6583 J

VERSUS                           15TH JUDICIAL DISTRICT COURT

                                 PARISH OF LAFAYETTE

D.R. HORTON, INC. - GULF COAST   STATE OF LOUISIANA

### DEFENDANT D.R. HORTON, INC – GULF COAST'S PEREMPTORY EXCEPTION(S) OF PRESCRIPTION/PEREMPTION AS TO PLAINTIFFS' FIRST AMENDED PETITION

NOW COMES, D.R. Horton, Inc – Gulf Coast, ("Defendant" or "D.R. Horton"), and for the sole purpose of excepting to the petition of Justin and Anna Pollock, ("Pollocks" or "Plaintiffs"), and pursuant to La. C.C.P. art. 927, who respectfully submits this *Peremptory Exception(s) of Prescription/Peremption* and accompanying memorandum as follows:

1.

The Defendant constructed a new residence (the "House") for the Plaintiffs whereby the Plaintiffs moved in and acquired title on or about September 23, 2013.

2.

Since this was a new residential construction, the Plaintiffs' claims are governed by the New Home Warranty Act. (the "Act" - La. R.S. 9:3141, et seq).

3.

The Act provides the *exclusive* remedies and warranties between a builder and an owner related to the construction of a new home. La. R.S. 9:3150.

3.

Further, the Act provides *peremptive* warranty periods ranging from one to five years, depending on the nature of the alleged defect. La. R.S. 9:3146.

4.

Plaintiffs filed suit on October 16, 2019, over six years after acquiring title to the home, alleging, *inter-alia*, leaking windows.

5.

Based on the peremptory periods set forth in the Act, any non-structural defective claim of the Plaintiffs had to be brought, at the latest, one year and thirty days after the transfer of title

1

and are now extinguished.

7.

In the event somehow the Act was determined not to apply, La. R.S. 9:2772 also establishes a maximum five-year peremptory period for deficiencies in the construction of immovables, either *ex contractu* and/or *ex delicto*, commencing upon occupancy by the Owner.

8.

Under La. R.S. 9:2772, the Plaintiffs' construction defect claims in their petition would also have prescribed and should be dismissed with prejudice.

9.

In its amended petition, the Plaintiffs acknowledge the peremptive/prescriptive period had run; therefore, the Plaintiffs now allege D.R. Horton entered some "new oral contract" on October 2, 2018 for the same repairs as claimed in the original law-suit, *inter-alia*, leaking windows.

10.

The "Contract of Sale" between the parties expressly states that "**No amendment or modification of the Contract shall be enforceable unless made in writing and signed and initialed by the parties**".

11.

D.R. Horton expressly denies any "new oral contract" was formed between the parties and Plaintiff's cannot show any corroborating evidence that D.R. Horton entered an oral contract after the peremptive/prescriptive period had run.

**WHEREFORE,** Defendant, D.R. Horton, Inc. – Gulf Coast, prays that the exceptions herein be deemed sufficient and that after hearing, the exceptions be maintained, and that the petition of the Plaintiffs' be dismissed as having prescribed, all at the expense of Justin and Anna Pollack, and with prejudice.

2

Respectfully submitted,

LAPEROUSE, APLC

By: _____

Edward J. Laperouse, II #29310
Christopher M. Patin #37963
Trenton Ball #37577
2051 Silverside Drive, Suite 120
Baton Rouge, Louisiana 70808
Telephone: (225) 416-0614
Facsimile: (225) 341-8941
**ATTORNEYS FOR**
**D.R. Horton, Inc. - Gulf Coast**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing *Peremptory(s) of Prescription/Peremption* has been served upon the following counsel of record via facsimile, first class U.S. mail (properly addressed and prepaid), or electronic mail to:

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

Baton Rouge, Louisiana, this _2nd_ day of December, 2019.

_____
**Christopher M. Patin**

FAX FILED THIS _2nd._
DAY OF _March_, 20 20
_Randal_
Deputy Clerk of Court

3

2-Mar-2020  15:59    Fax          Received 12253410941          Mar  2 2020 04:06pm    P006
                                                                12253410941                p.6

JUSTIN AND ANNA POLLOCK                      SUIT NO. 2019-6583-J

VERSUS                                       15TH JUDICIAL DISTRICT COURT

                                             PARISH OF LAFAYETTE

D.R. HORTON, INC. - GULF COAST               STATE OF LOUISIANA

### DEFENDANT D.R. HORTON, INC. – GULF COAST'S MEMORANDUM IN SUPPORT OF PEREMPTORY EXCEPTION(S) OF PRESCRIPTION/PEREMPTION AS TO PLAINTIFFS' FIRST AMENDED PETITION

MAY IT PLEASE THE COURT:

Defendant, D.R. Horton, Inc. – Gulf Coast ("D.R. Horton"), submits this memorandum in support of its *re-averred* peremptory exceptions filed in the above captioned matter.

1.    **Introduction**

On or about August 13, 2013, Justin and Anna Pollock, (the "Pollocks" or "Plaintiffs"), entered into an Agreement to Purchase Real Estate, (the "Agreement") with D.R. Horton for the purchase of a new single-family residence located at 213 Forest Drive within the city of Youngsville in Lafayette Parish, Louisiana (the "House"). Pursuant to the Agreement, D.R. Horton constructed and sold the House to the Pollocks in exchange for a price of $254,900, which was paid at closing. On or about September 23, 2013, the Pollocks took title to the property and moved into the House built by D.R. Horton.

The Plaintiffs' suit, which alleges damages related to defects in the construction of the House, was filed on October 16, 2019—more than six (6) years after taking title to and occupying the House. On January 27, 2019, and after D.R. Horton filed its original peremptory exceptions of prescription/peremption in response to the Plaintiffs' original petition, the Plaintiffs sought to amend their petition for damages, this time alleging a new, oral contract was somehow entered into between the parties long after the prescriptive/peremptive period had run. In this "First Amending Petition," the plaintiffs indeed admit that their claims against D.R. Horton under the New Home Warranty Act, La. R.S. 3144 *et. seq.*, ("the Act") have prescribed and/or been perempted; nevertheless, they assert that this "new, oral contract" obligated D.R. Horton to make repairs to their home nearly six and a half years after its construction.

This attempt at amending their petition to circumvent the Act is both obvious and fallacious, and D.R. Horton's original defense of prescription/peremption to the Plaintiffs' suit still prevails.

2.  **Law and Argument**

A.  **Peremptory Exception of Prescription/Peremption**

When a petition is prescribed on its face, the plaintiff bears the burden to show that prescription has not, in fact, run, was suspended or was interrupted. *Spott v. Otis Elevator Co.*, 601 So. 2d 1355 (La. 1992). The purpose of prescription is to afford defendant with security of mind and to bar stale claims. *Merrit v. Administrators of Tulane Educational Fund*, 94-0816 (La. App. 4 Cir. 7/8/94), 639 So. 2d 881.

Peremption is a period fixed by law for the existence of a right.  (La. Civ. Code 3458). Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. *Id.*  A homeowner is required to bring an action against a builder within the peremptive periods set forth in the New Home Warranty Act.  (see, *Robinson v. Papania*, 2015-1354 (La. App. 1 Cir. 10/31/16); 207 So. 3d 566, 580).

1.  **The New Home Warranty Act provides the exclusive remedy against D.R. Horton and preempts the Plaintiffs' claims.**

The Plaintiffs' claims against D.R. Horton directly stem from alleged defects in the construction of their House.  The New Home Warranty Act provides the exclusive remedy for claims by owners of new homes against a builder for such damages alleged by Plaintiffs. The Act provides as follows:

> **La. R.S. 9:3150:**
> This Chapter provides the *exclusive* remedies, warranties, and peremptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply. Nothing herein shall be construed as affecting or limiting any warranty of title to land or improvements.

It is uncontested that the Plaintiffs are the original owners of the subject House. It is also uncontested that defendant was the builder responsible for building the home.  Under the Act, builder and owner are defined as follows:

> **La. R.S. 9:3143:**
> For purposes of this Chapter the following words, phrases, and terms shall be defined and construed as follows:
>
> (1) "Builder" means any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence. A person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or any addition thereto, is a "builder", whether or not the consumer purchased the underlying real estate with the home.
>
> (6) "Owner" means the initial purchaser of a home and any of his successors in title, heirs, invitees, or assigns to a home during the time the warranties provided under this Chapter are in effect.

The specific warranties set forth in the Act are as follows:

La. R.S. 9:3144:
A. Subject to the exclusions provided in Subsection B of this Section, every builder warrants the following to the *owner*:

(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

(3) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

The "warranty commencement date" under the Act is the date title transfers or the date of occupancy, whichever occurs first. See La. R.S. 9:3143(7). The Act establishes the following rule regarding time for filing suit on a warranty claim:

La. R.S. 9:3146:

Any action to enforce any warranty provided in this Chapter shall be subject to a peremptive period of thirty days after the expiration of the appropriate time period provided in R.S. 9:3144.

All of the alleged defects raised by the Plaintiffs would fall into the category of "non-structural defects." Under the Act, claims for *non-structural defects* must be brought, at the absolute latest, more than one (1) year and thirty days from the date of occupancy or transfer of title, whichever occurs first. While D.R. Horton denies that it caused any of the damages alleged by the Plaintiffs arising out of purported defects in the House, the absolute latest the Plaintiffs could have brought suit on their claims under the Act would have been October 23, 2014—one year and thirty days after the warranty commencement date.[1]  This suit, however, was not filed until October 19, 2019.  Thus, the Plaintiffs' claims are thus perempted—and the Plaintiffs have even admitted this fact.[2]

2. **Alternatively, La. R.S. 9:2722 would perempt the Plaintiffs' claims.**

[1] Incidentally, a suit on Plaintiffs' claims related to alleged "leaking and/or defective windows" was required to be brought within one year and thirty days from the warranty commencement date.  (La. R.S. 9:3144(A)(1)).
[2] See Plaintiffs' "First Amending Petition," paragraph 58.

Memorandum in Support of Exceptions of Prescription/Peremption                      Page 3

Even if the Act were somehow determined not to apply to the Plaintiffs' claims against D.R. Horton—an assertion which is expressly denied—the claims would nevertheless be prescribed/preempted by reason of another statute.  Louisiana Revised Statute 9:2772 provides a peremptive period of five (5) years by which any claim "ex contractu, ex delicto, or otherwise" may be brought against a contractor arising out of the construction of a building.

La. R.S. 9:2772 provides, in pertinent part:

> A. No action, whether ex contractu, ex delicto, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought against any person performing or furnishing land surveying services, as such term is defined in R.S. 37:682, including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9):
>
> (1)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.
>
> (b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

Again, the Pollocks took possession of the House on September 23, 2013 - more than six (6) years prior to filing suit. Thus, their claims would further be prempted against D.R. Horton, the builder of the House, by La. R.S. 9:2772.

For the foregoing reasons, Plaintiffs' petition must be dismissed on the grounds of peremption.

   **B.     Plaintiffs' contrived argument that the parties entered into some "new, oral contract" is obtuse and hollow.**

In response to D.R. Horton's original-filed exceptions of prescription/peremption—and knowing that their claims were defeated—the Plaintiffs amended their Petition to allege that some "new oral contract" had been formed after the peremption period had run.[3]  Quite obviously, such assertion is nothing more than a guise by the Plaintiff's to obtain a warranty claim long after the prescriptive/peremptive period had run.

Nonetheless, the Plaintiffs' fail to advise the Court that the "Contract of Sale" between the parties expressly states, "No amendment or modification of the Contract shall be enforceable

---

[3] See Plaintiffs' "First Amending Petition," paragraph 58.

4/14/2021

2-Mar-2020  16:01  Fax

unless made in writing and signed and initialed by the parties."[4]  Thus, any additional terms of contract between the parties, had they even existed, would have needed to be in writing and signed by the parties.

D.R. Horton expressly denies that any "new oral contract" was ever formed between the parties, or that they agreed to some other "new" obligation.  All of the Plaintiffs' allegations in their suit emanate from the original construction and sale of the House by D.R. Horton to the Plaintiffs.  Plaintiffs cannot show any corroborating evidence that D.R. Horton entered an oral contract after the peremptive/prescriptive warranty period had run.

A party who demands performance of an obligation must prove the existence of the obligation.[5]  If the price or value of a contract is in excess of $500, the contract must be proved by at least one witness and other corroborating circumstances.[6]  Corroborating circumstances that are required must come from a source other than the party.[7]  Plaintiffs' claims of a new oral contract are nothing more than a feeble attempt by the Plaintiffs to lengthen the peremptive/prescriptive warranty periods set forth in the Louisiana Home Warranty Act.

**4.    Conclusion**

As the New Home Warranty Act provides the exclusive remedy as to the Plaintiffs' claims asserted in its petition, and as they failed to file suit on such claims within the time prescribed by the Act, their claims must be dismissed due to peremption.  In addition, and/or in the alternative, Plaintiffs' claims are perempted by La. R.S. 9:2772.   Plaintiffs late efforts to avoid legal peremption through amendment must also fail, as they cannot overcome the contractual and legal bars necessary to show that some "new" obligation was incurred by D.R. Horton.

Respectfully submitted,

**LAPEROUSE, APLC**

By: _____

Edward J. Laperouse, II #29310
Trenton Ball #37577
Christopher M. Patin #37963
2051 Silverside Drive, Suite 120
Baton Rouge, Louisiana 70808
Telephone: (225) 416-0614
Facsimile: (225) 341-8941
**Attorneys for D.R. Horton, Inc.—Gulf Coast**

---

[4] See Contract of Sale – Article 19.
[5] La. Civ. Code Art. 1831
[6] La. Civ. Code Art. 1846
[7] *Pennington Constr. v. R A Eagle Corp.*, 94-0575 (La. App. 1 Cir, 03/03/95); 652 So.2d 637

Memorandum in Support of Exceptions of Prescription/Peremption

FAX FILED THIS _____
DAY OF _____ 2020
_____
Deputy Clerk of Court

5/5

2-Mar-2020  16:02    Fax              Received.12253416941              Mar  2 2020 04:08pm     P011
                                                                        12253416941            p.11

                                                            59096602

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing *Memorandum in Support of the Peremptory Exception of Prescription/Peremption* has been served upon the following counsel of record via facsimile, first class U.S. mail (properly addressed and prepaid), or electronic mail to:

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

Baton Rouge, Louisiana, this _2ⁿᵈ_ day of March, 2020.

Christopher M. Patin

---

Memorandum in Support of Exceptions of Prescription/Peremption                    Page 6

FAX FILED THIS _2nd._
DAY OF _March_, 20 _20_
_____
Deputy Clerk of Court

2020-04-24 15:42 CDT



JUSTIN and ANNA POLLOCK          FIFTHTENTH JUDICIAL DISTRICT COURT
VERSUS                           DOCKET NO. 2019-6583 "J"
D.R. HORTON, INC. - GULF COAST   LAFAYETTE, LOUISIANA

**Justin and Anna Pollock's Opposition Memorandum to Defendant's Exception for Prescription/Peremption**

**I. Introduction**

On or about August 18, 2013, D.R. Horton constructed a new family home for Justin Pollock, Anna Pollock, and their children Spencer (18), Samantha (9), Rachel (7), and Oliver (2). This home, which D.R. Horton threw together, was riddled with defects, including but not limited to: leaking, improperly installed windows, improperly installed HVAC system, and mold present throughout the home. Today, more than seven years later, these issues are still present in the home. Oliver and Rachel have spent their entire lives in a house with an out-of-control mold problem. Samantha, who was three years old at the time her parents moved into the home, developed respiratory issues as a direct result of this mold problem and therefore has spent the majority of her life in a house that is actively causing her medical issues. Spencer, now a major, is the only child of the Pollocks who is no longer trapped in this unremedied health hazard, but he still spent seven years living in a home riddled with defects, suffering both mentally and physically.

Now, in April of 2020, Governor John Bel Edwards has continued his March order commanding the citizens of Louisiana to stay home due to the outbreak of COVID-19. This dictates that the Pollocks stay locked in their own personal hell, a home riddled with mold and bad memories. Not only are they unable to escape as they usually would to school, work, and the like, but if one of the Pollocks should catch COVID-19, a disease largely affecting a person's pulmonary system, they would be at a greater risk than a typical individual because of their pre-existing respiratory issues directly caused by mold present for years in their home. This mold is the direct result of D.R. Horton's failure to properly repair the home.

The Pollocks, a hard-working American family, saved up and purchased what they assumed would be their dream family home for approximately $254,000. They were hoping, like most Americans, that this dream home in a safe neighborhood would either serve as their forever home or that they'd be able to sell it at a profit should the need to move arise. Neither of these options are currently available to the Pollocks. They are trapped in a mold-infested home that is now worthless due to the failure of D.R. Horton to both install and/or repair the home to an inhabitable condition.

From 2013 to 2019, the Pollocks attempted to work with D.R. Horton, to settle things amicably and without jumping to file suit. They filed warranty claims allowing D.R. Horton the opportunity to repair the house not once, not twice—but *seven times*. On seven occasions, the Pollocks, acting in good faith, trusted D.R. Horton to repair their home and allow the family to, for the first time, live peacefully in their newly constructed home. Rather than repair the home, D.R. Horton rewarded the Pollocks' patience with half-attempted patchwork fixes and band-aid solutions in an attempt to string them along until after the peremptive period for suit expired. D.R. Horton is now attempting to circumnavigate its contractual and legal obligation to repair its defective work product by stringing along the Pollocks with false promises of repairs and then abandoning these trusting people the minute the peremptive period expired. To allow this to continue would be a mockery of the legal system and to general notions of justice, condemning the Pollocks and future hard-working Americans to live in homes hastily constructed and inadequately repaired.

II.   Law and Argument

D.R. Horton asserts that the Louisiana New Home Warranty Act (hereinafter NHWA) is the exclusive remedy for the Pollocks in this case. To believe this fallacious claim, this honorable court would have to ignore not only law and jurisprudence, but also to completely disregard notions of fairness and justice. D.R. Horton's desperate attempt to direct the court away from the promises it made to the Pollocks are obvious.

As outlined in more detail below, D.R. Horton's exceptions of peremption and prescription lack merit for the following reasons: (A) the Pollocks have remedy outside the NHWA, under the law of contract when, after initial construction, D.R. Horton created a new oral contract to reconstruct the front of the Pollock family home than breached that oral contract, (B) if this court finds that the work contracted to by defendants constitutes not construction but "repair," Louisiana Revised Statute 9:2772 dictates that the Pollocks have a timely suit for breach of contract for those repairs because a new prescriptive period began at the start of the oral contract to repair and defendant's continued attempts to repair through 2019, and (C) the Pollocks also have a timely claim under the NHWA under the plain language of that statute.

A. Plaintiffs have a claim for breach of contract; defendant's assertion that the New Home Warranty Act is the Pollocks' exclusive remedy is disingenuous and contrary to law and fact

1. **D.R. Horton created a new oral contract to reconstruct the front of the Pollock home that is evidenced by a recording from D.R. Horton superintendent stating that D.R. Horton would repair the home**

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."[1] There are four necessary elements for valid contract: capacity, consent, object, and lawful cause.[2] It is undisputed that three of the four elements have been met.

The element of consent is the only element at issue in the present case. Louisiana Civil Code provides that "[a] contract is formed by consent of the parties established through offer and acceptance" and that "[u]nless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, writing or by action or inaction that under the circumstance is clearly indicative of consent."[3] There is no dispute that there is no written contract between the parties. Therefore, the question is whether there was an oral contract in which defendant agreed to repair the Pollocks' home.

La. Civ. Code Article 1846 provides that an oral contract not reduced to writing for a price or value above $500.00 must be proved by at least one witness and other corroborating circumstances.[4] To meet the burden of proving an oral contract by a witness and other corroborating circumstances, a plaintiff may serve as her own witness and the "other corroborating circumstances" may be general and need not prove every detail of the plaintiff's case.[5] The corroborating evidence, however, must come from a source other than the plaintiff.[6] In *Hodson*, Plaintiff purchased a new home from Defendant. Approximately six years later, Plaintiff called Defendant requesting that he come to the home to examine tile flooring and grout that was cracking and crumbling. Plaintiff expected Defendant to have damage repaired and Defendant advised that he would "look into it and get back with her." However, Defendant never got back with Plaintiff and an oral agreement was never met. Plaintiff filed suit against Defendant alleging that Defendant breached a new oral agreement to inspect and repair the flooring after the New Home Warranty Act peremption period had run. The court in *Hodson* ruled as follows: (1) that the testimony of the Plaintiff's daughter, who was not present at the time of Defendant's examination, did not provide required corroboration of purchaser's testimony that she had an oral contract; and (2) the vendor's

---

[1] Louisiana Civil Code Article 1906
[2] *Leger v. Tyson Foods*, 95-1055 (La. App. 3d Cir. 01/31/96); 670 So.2d 397, *writ denied* 671 So.2d 920, 1996-0345 (La. 4/19/96)
[3] Louisiana Civil Code Article 1927
[4] *Bodnet v. Daron Ceramic Builder, Inc.*, 2017-1235 (La. App. 1st Cir. 02/27/18); 243 So. 3d 597.
[5] *Id*
[6] *Id*

testimony indicating that he promised to get back with purchaser about the flooring but neglected to do so did not provide the required corroboration of the purchaser's testimony that she had an oral contract because an acknowledged broken promise to look into a situation does not equate to repair.[7]

*Hodson* is a case of great significance since the facts of the case are similar to the present case. In both cases, the defendants were called to examine the defects of the house six years after the house was purchased. In both cases, the New Home Warranty Act's peremptive period ran for only five years. In both cases, the breach of contract allegations were for new oral contracts formed after the initial five-year peremptive period had run.

The case at bar, however, has major factors distinguishing it from *Hodson*. In *Hodson*, the court found insufficient corroboration of plaintiff's sister's testimony as to the existence of an oral contract because of the plaintiff's sister's absence. For the Pollocks' case, there are four people present and involved in the conversation where the oral contract was formed: two D.R. Horton representatives, Mr. Pollock, and Mrs. Pollock. All four can testify they were present when the oral contract was entered into. Corroborating evidence exists to back Ms. Pollock's testimony.[8]

In *Hodson*, the court ruled that the vendor's testimony promising to get back with purchaser about the flooring but neglected to do so did not provide corroboration of the purchaser's testimony that she had an oral contract. The court reasoned that because an acknowledged broken promise to look into a situation does not equate an oral agreement to repair.[9]  In the present case, the defendant did not promise to "look into it." D.R. Horton did much more. The Pollocks and Defendant had an oral agreement to repair as evidenced in the transcripts of the recording pertaining to oral contract:

| | |
|---|---|
| D.R. Horton Representative 1: | "No, we're not gonna do that.  I'm gonna fix it." |
| D.R. Horton Representative 2: | "He's gonna fix it." |
| Pollock: | "All right."[10] |

The D.R. Horton representative went into more detail about the process of fixing the defects in the Pollock family home:

---

[7] *Id*
[8] Exhibit A - Transcript from recording
[9] *Id* Footnote 4 - (Page 18, Lines 15-18)

D.R. Horton Representative:     "Let me – I'm pretty serious whenever I'm going to look at some – get some engineering done to see what it would take to put a brick wall right here"[1]

This substantially differentiates the present case from the *Hodson* case: there is a clear, explicit statement from the defendant saying they were going to repair the defects in the home and an explanation of how they would do so. This instantly created a new oral contract. If this oral acceptance is not enough to comply with an oral contract, the Defendants next acts surely did so: D.R. Horton then *went to Pollock home and began repairing the defects*. These acts clearly show acceptance of the Pollocks' oral offer by beginning to perform under the new oral contract.

Compare this to the defendant's mere promise to look into it in the *Hodson* case. Clearly there is an enormous difference between (1) one person making a promise to look into something and *never* showing up and (2) two of defendants' representatives agreeing to fix the defects (an oral acceptance) and *showing up to perform the work*, (an acceptance by action under La. C.C. art. 1927), only stopping after puncturing holes through the walls of the Pollock home.

This honorable court should find that an oral contract formed between the Pollocks and defendants finding corroborating evidence in the recording and its transcript proving that an oral contract was formed, that defendants consented, and that the defendants accepted orally and by action when they subsequently began work on the house.

### 2.   D.R. Horton failed to complete the Pollock family home; therefore D.R. Horton's position that the claim falls only under the New Home Warranty Act is invalid

The Louisiana New Home Warranty Act was designed to protect homeowners from faulty workmanship, not to insure completion of the construction of a home under the terms of an owner-builder contract.[12] Where the builder abandons construction of the home and fails to fulfill his obligation under contract, he may be found liable in an action for breach of contract.[13]  In *Thorn*, the plaintiff entered into a contract with the defendant for the construction of their home. At around ninety percent of completion, the defendant abandoned the project and refused to return for further work. The court held that the NHWA was not the exclusive remedy and that plaintiff's breach of contract claim was valid.[14]

_____

[11] *Id* Footnote 8 – (Page 18, Line 19)
[12] *Thorn v. Closkey*, App. 2nd Cir. 199, 745 So.2d 653, 32, 310 (La. App 2nd Cir. 9/23/99).
[13] *Id*
[14] *Id*

In the present case, the Pollocks entered into a new oral agreement with defendant to reconstruct portions of the house. Like in *Thorn*, defendant in this case started working to reconstruct the Pollock's family home then abandoned the contract after commencement of repairs. To add insult to injury, during that reconstruction, prior to abandoning the Pollocks, defendant punctured holes in the home's walls, then refused to return. This is a clear breach of contract claim: the reconstruction portion of defendant's work was clearly agreed to, clearly commenced, and clearly abandoned.

Louisiana Civil Code provides, "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.[15] Where a building contractor, through his own negligence, is unable to complete the contract and thereupon abandons it, he is liable for the loss resulting, including the amount reasonably expended in minimizing such loss.[16] The proof needed to impose liability under Louisiana Civil Code article 2769 must include "some showing of want of skill, efficiency or knowledge, or some lack of ordinary care in the performance of the work or in the selection of suitable materials and equipment."[17]. In *Melder*, the homeowner and contractor entered into an oral contract to construct an addition to the homeowner's home. The homeowner contended that the contractor failed to brace the roof in the room addition with roof trusses and that his improper preparation of the foundation of the concrete floor caused the new addition to separate from the original house. The Court in *Melder* found that pursuant to the parties' agreement, the contractor was required to install roof trusses to support the new roof and his failure to do so entitled the homeowner to damages pursuant to Louisiana Civil Code article 2769.[18]

The oral agreement between the Pollocks and D.R. Horton was to reconstruct the entire front of their home to repair extensive mold growth resulting from leaking windows originally installed by D.R. Horton. Defendant verbally agreed–in fact *insisted* upon–beginning reconstruction, begin that work for two days, then abandoned the work for unknown reasons. Their abandonment shows a lack of ordinary care in the performance of their work; the defendant clearly did not care if they left punctured holes in the walls of the Pollock home, whether the leaking windows were repaired, whether, despite their initial show of concern, this family continued

[15] Louisiana Civil Code Article 2769
[16] *Hammond Oil & Dev. Co. v. Feibel*, 115 La. 132, 38 So. 941 (1905)
[17] *Melder v. Gautier*, 436 So.2d 628 (La. App. 3rd Cir. 1983)
[18] *Id.*

breathing potentially toxic mold resulting from the defendant's failure to complete the job. This case is exactly analogous to *Melder* and *Thorn*. Those cases and the plain language of the statute dictate that D.R. Horton be held liable under Louisiana Civil Code article 2769.

Furthermore, since the NHWA provides *"minimum required warranties,"* it does not prohibit a builder from agreeing to increase, rather than reduce, his warranties to the owner of a new home. Thus, a builder may contractually assume greater obligations or warranties than those afforded by the NHWA, and under those circumstances the owner would presumably have a separate cause of action based upon the breach of those specific contract provisions.[19] Additionally, in *Hodson*, the Court saw no issue regarding the expiration of warranties pursuant to the NHWA, because a builder and homeowner may enter into a collateral agreement regarding additional repairs/remedies outside of the exclusive minimum required warranties in the NHWA. This Honorable Court should compare this case and find that the defendants entered into an oral agreement regarding repairs and explained how they were going to remedy the catastrophic repairs by hiring an engineer. The defendants assumed greater obligations outside the NHWA and failed to comply with those obligations by commencing work on the repairs and abandoning the contract after beginning performance. Thus, the Court should conclude the Pollocks, who were owners of the home, could bring a separate cause of action based upon the breach of those specific contract provisions that were agreed upon by the Pollocks and Defendants outside of the NHWA.

### B. In the alternative, the improvements and/or faulty repairs have different peremptive periods than construction under La. R.S. 9:2772

Louisiana Revised Statute provides, in part, that "[n]o action, whether ex contractu, ex delicto, or otherwise ... shall be brought against any person ... (1)(A) more than five years after the date of registry in the mortgage office of acceptance of the work by the owner. (b) if no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner,"[20] Defendant in his supporting memorandum conveniently ignores the plain language of this statute: that, as here, when there is no acceptance timely filed in the mortgage office, peremption is triggered by the owner's occupation or possession of the improvement.

Initial construction on the Pollock house took place in 2013; the family moved into their home in September of 2013. An oral contract to repair the home was formed in July of 2019. The

---

[19] *Barnett v. Watkins*, 2006-2442 (La. App. 1st Cir. 09/19/07); 970 So.2d 1028
[20] Louisiana Revised Statute 9:2772

improvement contemplated in the oral contract—repair and replacement of the mold-causing window construction—that forms the basis of this suit was never completed so the Pollocks *never began possessing the improvements*. To this day the Pollocks experience leaking and mold issues. How could this honorable court find that the Pollocks have begun to occupy or possess, in whole or in part, incomplete and faulty repairs, when the Pollocks never stopped pleading with the defendant to fix their home? To date, the Pollocks have never begun occupying the improvement to the home because the improvement was never completed. As such, the Pollock home remains unacceptably dangerous and the Pollocks' suit is not barred by exception.

However, if this court chooses to ignore the plain language of 9:2772 and instead adopts the defendant's argument that the peremptive period commenced when the Pollocks first moved into the home, Louisiana jurisprudence still provides that defendant would be liable for any faulty repairs attempted on the home.[21] In *Vicari*, homeowners filed a breach of contract claim for improper installation and improper repairs of windows that the plaintiffs needed installed on their home and that defendants inadequately installed/repaired. The 5th Circuit Court of Appeal held that the peremptive period for the improper *initial* installation of the windows had run, but that there is a separate peremptive period that commenced for the improper *repairs*, and that that period of time had not run. This case exactly mirrors the Pollocks' situation. As such, this honorable court can both hold that the peremptive period for the faulty window installation at the time of initial home construction began to run when the Pollocks first occupied the house, and that a separate, unprescribed peremptive period exists for the numerous faulty, patchwork repairs defendant attempted as late as 2019. As such, plaintiffs' suit is timely.

C. The Pollocks also have a timely claim under the Louisiana New Home Warranty Act

Based on the plain language of the Louisiana New Home Warranty Act, the Pollocks have never lived "free from defect" in the home provided by D.R. Horton and therefore have remedy under the Act. The NHWA provides, in part, that:

> (1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
> (2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, ventilating systems exclusive of any appliance, fixture, and equipment will be free from defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

---

[21] *Vicari v. Window World, Inc.*, 171 So.3d 425 (La. App. 5th Cir, 05/28/15)

(3) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with building standards or due to other defects in materials or workmanship not regulated by building standards.

Each of these paragraphs is clear and unambiguous. They each state that the home will be free from defect for the period of time allotted by the statute. The Supreme Court of Louisiana, quoting *State v. Freeman*, held in *State v. Peluto* that "where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit." The clear, unambiguous language of the statute says the home will be free from defect for a minimum of one year and a maximum of five years. The Pollock home has never been free from defect so the NHWA peremptive period has never commenced.

Many courts in Louisiana argue that the NHWA was enacted to protect contractors from the threat of never-ending litigation, but the Supreme Court in *State v. Peluto* clearly demands that the plain and clear language of the statute should be followed: the home will be free from defect for from between one year and five years from warranty commencement, depending on the type of defect. The Pollocks home, again, has been riddled with defects and issues from the onset, including the structural defects contemplated in the NHWA's five-year provision. They repeatedly made these defects known to the defendant. They gave defendant repeated opportunities to remedy these defects. Defendant responded by half-heartedly attempting minimal repairs, then biding its time so it could claim preemption, abandoning the Pollocks when the coast was clear. To allow defendant to escape liability on its conjured technicality would be a mockery of justice. Additionally, to allow the defendant to escape liability would be to open the floodgates of litigation from Plaintiffs, rather than seeking to work with the contractors, seeking to preserve their rights in the event that any attempted repairs from contractors were faulty. Rather than suing to recover from harm, they would be filing suit to preserve their right.

**III. Conclusion**

The plaintiffs have a valid and timely-filed breach of contract claim. Defendant attempts to disguise and dismiss their contractual liability through unmerited peremption claims aimed at forcing the Pollocks to find remedy only under the New Home Warranty Act and not the law of contract. The defendant clearly entered into a new oral agreement, amply evidenced, with the Pollocks, to remedy the dangerous defects caused by defendants in the Pollock home, then breached that contract by failing entirely to do any such thing.

The plaintiffs have timely claims for improvements and/or repairs under La. R.S. 2772 because they never occupied or possessed those improvements and the repairs involved bear their own separate prescriptive period. Defendant asserts that the Pollocks' claims are perempted under LA R.S. 9:2772. Again, their position is contrary to relevant facts and Louisiana law.

Lastly, even the New Home Warranty Act gives the Pollocks remedy: the plain language of the NHWA clearly and unambiguously state that a home must be free from defect for a requisite amount of time prior to peremption. The Pollocks' house has never been free from defect and they have been attempting to work with defendant from the beginning to fix these issues. To penalize the Pollocks for attempting to work with Defendants would be contrary to both law and justice.

Justin and Anna Pollock pray that this honorable court dismiss defendant's motion and assess all reasonable fees against the movant.

Respectfully submitted,

Beal & Hernandez, L.L.P.

BY: _____

LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
600 JEFFERSON ST. SUITE 810
LAFAYETTE, LA 70501
TELEPHONE: (337)-991-6263
FACSIMILE: (337)-534-0310
*Attorneys for Plaintiffs*

FAX FILED THIS _24th_

DAY OF _April_ 20 _20_

_____
Deputy Clerk of Court

File# 2020 000 11063



**FIFTEENTH JUDICIAL DISTRICT COURT**
STATE OF LOUISIANA
PARISHES OF: ACADIA, LAFAYETTE, VERMILION

MARILYN C. CASTLE
DISTRICT JUDGE, DIVISION L

800 S. BUCHANAN ST., STE. 200
LAFAYETTE, LA 70501

PH (337) 291-5130
FAX (337) 291-5136

## 15TH JUDICIAL DISTRICT COURT'S FOURTH SUPPLEMENTAL EMERGENCY ORDER RELATIVE TO COVID-19 PUBLIC HEALTH EMERGENCY

### PARISHES OF ACADIA, LAFAYETTE AND VERMILION

In light of the COVID-19 public health emergency, the state of emergency declaration issued by Governor John Bel Edwards on March 13, 2020, the additional measures contained in his Proclamation JBE 2020-30 issued on March 16, 2020, and his Proclamation 33 JBE 2020-30 issued on March 22, 2020 closing all state offices and ordering persons to remain at home except in emergencies and his additional Order of March 30, 2020 extending his previous orders until at least April 30, 2020; the recommendations issued on March 12, 2020 by the Louisiana Supreme Court and the Orders of the Louisiana Supreme Court of March 16, 2020 and March 23, 2020; the emergency declarations issued by Lafayette Mayor President Josh Guillory on March 15, 2020 and March 16, 2020 which ordered the minimization of access to certain public buildings in Lafayette Parish and his extension of those orders to such time as the Governor rescinds his emergency declaration; the Fifteenth Judicial District Court extends and supplements its Emergency Orders Relative to COVID-19 issued on March 15, 2020, March 19, 2020 and March 23, 2020 and issues the following additional Order for the Parishes of Acadia, Vermilion and Lafayette: In all parishes, the courthouses shall be closed to the public except to provide services in the following categories:

Civil domestic protective orders under title 46:2131(Domestic violence), 46:2181(Post-Separation family violence) and 9:361(Sexual abuse).

Emergency child custody matters pursuant to La. C.C.P. Article 3945

Proceedings for children removed from their home by emergency court order

Emergency interdiction/commitment matters.

Adult criminal 72 hour hearings and bond reductions, including Gwen's Law hearings, will be conducted via telephone or video conference.

Juvenile bond hearings and initial appearances will be conducted via telephone or video conference.

In Acadia Parish, those seeking to transact business other than the above matters should contact the Clerk of Court's Office. Telephone numbers of the appropriate departments are posted at the front door of the Acadia Parish courthouse.

In Lafayette and Vermilion Parishes, persons seeking civil domestic protective orders under Title 46:2131(Domestic Violence), 46:2181(Post Separation Family Violence) and 9:361(Sexual Abuse) and emergency child custody matters pursuant to La. C.C.P. Article 3945 shall make application for such between 10:00 AM and 2:00 PM at the appropriate courthouse.

Individuals may continue to contact a judge's office with whom they have business by telephone only.

All matters set forth in all previous orders regarding special fixings, as well as all orders which are not in conflict with this Order, shall remain in effect. This Order shall be effective through 12 A.M. on May 3, 2020.

Issued on March 31, 2020 at Lafayette, Louisiana.

MARILYN C. CASTLE, Chief Judge
15th Judicial District Court

FILED THIS  1st
DAY OF  April  , 2020 2020

Deputy Clerk of Court

2/2



JUSTIN AND ANNA POLLOCK                    SUIT NO. 2019-6583 J

VERSUS                                     15TH JUDICIAL DISTRICT COURT

                                           PARISH OF LAFAYETTE

D.R. HORTON, INC. - GULF COAST             STATE OF LOUISIANA

### RULE TO SHOW CAUSE

Considering the foregoing *Peremptory Exception of Peremption/Prescription* filed on

behalf of the Defendant, D.R. Horton, Inc. —Gulf Coast:

IT IS ORDERED, that Justin and Anna Pollock show cause on the _4_ day

_May_ _____, 2020 at _10_ o'clock _A___ .m, why *Peremptory Exception* of

*Peremption/Prescription* should not be granted.

Signed this _9_ day of _March_, 2020, at _Lafayette_, Louisiana.

_____
15ᵗʰ Judicial District Judge

**PLEASE SERVE:**

Justin and Anna Pollock
213 Forest Grove Dr.
Youngsville, La. 70592

**PLEASE NOTIFY:**

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

FILED THIS _9_
DAY OF _March_, 20_20_
_Katy Melancon_
Deputy Clerk of Court

1

FILE # 202000013755



FIFTEENTH JUDICIAL DISTRICT COURT
STATE OF LOUISIANA
PARISHES OF ACADIA, LAFAYETTE, VERMILION



**MARILYN C. CASTLE**
DISTRICT JUDGE, DIVISION L
◆
800 S. BUCHANAN ST., STE. 300
LAFAYETTE, LA 70501

## 15TH JUDICIAL DISTRICT COURT'S FIFTH SUPPLEMENTAL EMERGENCY ORDER RELATIVE TO COVID-19 PUBLIC HEALTH EMERGENCY PARISHES OF ACADIA, LAFAYETTE AND VERMILION

In light of the COVID-19 public health emergency, the state of emergency declaration issued by Governor John Bel Edwards on March 13, 2020, the additional measures contained in his Proclamation JBE 2020-30 issued on March 16, 2020, and his Proclamation 33 JBE 2020-30 issued on March 22, 2020 closing all state offices and ordering persons to remain in home except in emergencies and his additional Order of March 30, 2020 extending his previous orders until at least April 30, 2020 and his order of April 27, 2020 extending his previous order until May 15, 2020, the Orders of the Louisiana Supreme Court of April 6, 2020, April 22, 2020 and April 29,2020; the emergency declarations issued by Lafayette Mayor President Josh Guillory on March 15, 2020 and March 16, 2020 which ordered the minimization of access to certain public buildings in Lafayette Parish and his extension of those orders to such time as the Governor rescinds his emergency declaration; the Fifteenth Judicial District Court extends and supplements its Emergency Orders Relative to COVID-19 issued on March 15, 2020, March 19, 2020 and March 23, 2020, March 31, 2020 and April 8, 2020 and issues the following additional Order for the Parishes of Acadia, Vermilion and Lafayette:

### COURTHOUSE ACCESS

In Lafayette and Vermilion parishes, the courthouses shall be closed to the public except to provide services in the following categories:

- Civil domestic protective orders under title 46:2131 (Domestic violence), 46:2181(Post-Separation family violence) and 9:361(Sexual abuse)

- Emergency child custody matters pursuant to La. C.C.P. Article 3945

- Proceedings for children removed from their home by emergency court order

- Emergency interdiction/commitment matters

In Lafayette and Vermilion Parishes, persons seeking civil domestic protective orders under Title 46:2131(Domestic Violence), 46:2181(Post Separation Family Violence) and 9:361(Sexual Abuse) and emergency child custody matters pursuant to La. C.C.P. Article 3945 shall make application for such between 10:00 AM and 2:00 PM at the appropriate courthouse.

In Acadia parish, the Clerk of Court's office will accept between the hours of 8:30 AM and 4:00 PM filings for:

- Civil domestic protective orders under title 46:2131 (Domestic violence), 46:2181(Post-Separation family violence) and 9:361(Sexual abuse)
- Emergency child custody matters pursuant to La. C.C.P. Article 3945
- Proceedings for children removed from their home by emergency court order
- Emergency interdiction/commitment matters

The Clerk of Court of Acadia Parish will accept in person filings in other matters from the public using the following procedure:

- Only people with direct business with the Acadia clerk of court will be admitted. No companions allowed.
- Those seeking admission to the Acadia clerk of court's office must wear a face mask or covering.
- A limited number of individuals will be allowed in at any one time, so people will be screened at the entrance to the courthouse before they are admitted.
- The clerk of court reserves the right to refuse in person filing at any time if he deems it advisable for the health and safety of his employees and to require filings be left in the Clerk drop box outside of the Acadia courthouse.

### CRIMINAL PROCEEDINGS

Adult criminal 72 hour hearings, bond reductions, including Gwen's Law hearings and arraignments for incarcerated individuals will be conducted via telephone or video conference, as well as any other proceeding authorized by code of Criminal Procedure Article 562.

Juvenile bond hearings and initial appearances will be conducted via telephone or video conference.

Anyone who has missed a criminal court date due to the COVID-19 stay at home order between March 16, 2020 and May 15, 2020 will be required to appear for service of a new court date in accordance with the schedule to be posted on the 15th JDC website, www.15thjdc.org as soon as the Stage One reopening is announced by the governing authority.

### CIVIL PROCEEDINGS

All civil hearings, including Motions for Summary Judgment are to be conducted by video or telephone conference, unless show good cause can be shown otherwise. Communications will be sent from each Judge's office concerning scheduling of video conferences. If you do not receive communication, contact the presiding judge's office. Rules regarding video conferencing are posted on the court's website, www.15thjdc.org. This video procedure in civil hearings is expected to continue beyond the end of the stay at home order.

### CHILD IN NEED OF CARE PROCEEDINGS

Child in Need of Care cases will proceed via Zoom conference and, in special circumstances, may proceed by emergency in-person hearing.

**GENERAL RULES**

Any member of the public allowed entry into the courthouse in Acadia, Vermillion or Lafayette Parish shall wear a mask or other face covering which shall completely cover the mouth and face.

Individuals may continue to contact a judge's office with whom they have business by telephone or email only.

As per orders of the Louisiana Supreme Court, all jury trials, criminal or civil, scheduled to commence prior to June 30, 2020 will be continued and reset.

All matters set forth in all previous orders regarding special fixings, as well as all orders which are not in conflict with this Order, shall remain in effect. This Order shall be effective through 12 A.M. on May 16, 2020.

Issued on April 30, 2020 at Lafayette, Louisiana.

MARILYN C. CASTLE
Chief Judge, 15th Judicial District Court

FILED THIS ___IST___
DAY OF ___MAY___, 20_20_

Deputy Clerk of Court

Lafayette Parish
Filed Aug 07, 2020 4:13 PM    C-20196583
Kireston Batiste
Deputy Clerk of Court

| | | |
|---|---|---|
| **JUSTIN AND ANNA POLLOCK** | * | **15TH JUDICIAL DISTRICT** |
| | * | |
| **VERSUS** | * | **DOCKET NO.: 2019-6583J** |
| | * | |
| **D.R. HORTON, INC. – GULF COAST** | * | **LAFAYETTE PARISH, LOUISIANA** |

## MOTION TO COMPEL DEPOSITION AND SUBPOENA DUCES TECUM

NOW INTO COURT, through undersigned counsel comes Plaintiff, **JUSTIN AND ANNA POLLOCK** (hereinafter, "the Pollocks"), who respectfully avers as follows:

1.

On or about October 16, 2019, the Pollocks filed a *Petition for Damages* in the Fifteenth Judicial District Court alleging that D.R. Horton, Inc.-Gulf Coast (hereinafter, "Defendant") constructed a defective home including improper window installation, improper HVAC system installation causing mold growth throughout the home.

2.

On or about January 27, 2020, the Pollocks filed a *First Amending Petition* alleging D. R. Horton acknowledged the subject defects and poor workmanship over the course of time, and the Pollocks entered an amending and/or additional oral contract with D. R. Horton through two D.R. Horton, Inc-Gulf Coast representatives, Serge Renoux and Thomas Guillory (hereinafter, "the representatives, Mr. Renoux, or Mr. Guillory") to repair and correct the aforementioned defects within the Pollock's home.

3.

By way of background, on or about October 24, 2018, Mr. Renoux and the Pollocks had a conversation whereby Mr. Renoux specifically acknowledges on multiple occasion the defects within the Pollock's home and on behalf of D. R. Horton accepts responsibility therefore.

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

1 | P a g e
Justin and Anna Pollock Vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Motion to Compel Deposition and Subpoena Duces Tecum

4.

On or about July 19, 2019, the Defendants sent the representatives to the Pollocks to inspect the defected home.

5.

On or about July 19, 2019, as stated above, the Pollocks and D. R. Horton, through its authorized representatives, entered an oral agreement to fix the defective home and subsequently performed thereunder at the Pollocks' home.

6.

On June 25, 2020, the Pollocks filed a *Notice of Article 1442 Deposition* and a *Subpoena Duces Tecum for a corporate 1442 Deposition*, inclusively setting the depositions of SERGE RENOUX, THOMAS GUILLORY, ALLISON HINSON, AND NAIOMI THIBODEAUX on July 23, 2020. A copy of the *Notice of Article 1442 Deposition* and the *Subpoena Duces Tecum for 1442 Deposition* are attached hereto as Exhibit "A" *in globo*.

7.

On July 17, 2020, counsel for the Defendant fax filed a motion to quash said discovery, seeking to limit all discovery to only the depositions of Serge Renoux and Thomas Guillory; however, as of this submission, the Court has not signed any order staying any discovery proceedings.

8.

On July 23, 2020, Counsel for the Pollocks appeared with a court reporter at the Defendant's Counsel's office in Baton Rouge to depose the Defendant representatives in accordance with the *1442 Deposition notice*.

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

2 | P a g e
Justin and Anna Pollock Vs. D.R. Horton, Inc.-Gulf Coast
15ᵗʰ Judicial District Court, Parish of Lafayette
Motion to Compel Deposition and Subpoena Duces Tecum

4/14/2021

9.

The Defendant's Counsel stated that no deposition would be taken, no witnesses would appear, and no subpoenaed records would be provided.

10.

On July 30, 2020, Plaintiffs' counsel initiated held a Rule 10.1 conference by telephone regarding the *Motion to Quash the Deposition and or the failure to appear or produce*. Defense counsel reiterated that no discovery would be made available to the Pollocks. Counsel for Defense was informed that a *Motion to Compel* would be filed. See Exhibit "B", Letter setting conference and letter memorializing conference, *in globo*).

11.

Under the provisions of the Louisiana Code of Civil Procedure Articles 1461, 1462 and 1469, the Plaintiffs, the Pollocks, are entitled to an Order compelling the Defendant to produce the Defendant's representatives and the subpoenaed documents in accordance with the Subpoena Duces Tecum and notice of 1442 deposition.

12.

The Pollocks are also entitled to recover all reasonable expenses incurred in obtaining the Order compelling the Defendant to respond to the Subpoena Duces Tecum for 1442 Deposition, including attorneys' fees, as Defendants failure to respond and to provide the representatives is warrantless.

**WHEREFORE,** the Pollocks pray that an Order be issued to Defendant, D.R. Horton, Inc.-Gulf Coast, requiring it to show cause why it should not be required to respond the *Subpoena Duces Tecum or appear in accord with the notice of 1442 Deposition as* propounded to the Defendant by the Pollocks and further requiring it to pay

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

the expenses incurred by the Pollocks in bringing this motion, including all attorneys' fees and costs to be fixed by the Court.

Respectfully submitted,

**Beal and Hernandez L.L.P.**

LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
600 JEFFERSON ST. SUITE 810
LAFAYETTE, LA 70501
TELEPHONE: (337)991-6263
FACSIMILE: (337)534-0310
*Attorneys for Justin and Anna Pollock*

> Please Serve
> **DR Horton - Gulf Coast**
> **Through Counsel of**
> **Record Christopher Patin**
> **Attorney at Law**
> **8034 Jefferson Hwy**
> **Baton Rouge, LA 70809**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing pleading has been served upon counsel for all parties via one or more of the following:

☐ Hand Delivery
☒ Facsimile

☒ Electronic mail
☐ U.S. Mail, Postage prepaid

**SIGNED** at Lafayette, Louisiana, on this __7th__ day of __August__ 2020.

LANCE C. BEAL

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

4 | P a g e
Justin and Anna Pollock Vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Motion to Compel Deposition and Subpoena Duces Tecum

| | | |
|---|---|---|
| JUSTIN AND ANNA POLLOCK | * | 15TH JUDICIAL DISTRICT |
| | * | |
| VERSUS | * | DOCKET NO.: 2019-6583J |
| | * | |
| D.R. HORTON, INC. – GULF COAST | * | LAFAYETTE PARISH, LOUISIANA |

## ORDER

IT IS ORDERED that a rule to show cause issue in the above and foregoing "Motion to Compel" directing DR·Horton - Gulf Coast to show cause on the ___21___ day of ___SEPTEMBER___, 20_20_ at ___10:00___ o'clock, _A_.m., in **LAFAYETTE** Louisiana, why:

1. This Honorable Court should not compel DR Horton - Gulf Coast to appear, answer and deliver the outstanding discovery due to Justin Pollock.

2. This Honorable Court should not order DR Horton - Gulf Coast to pay the expenses, including attorney fees, associated with filing this motion, pursuant to C.C.P. art. 1469.

THUS DONE AND SIGNED on this the ___11___ day of ___August___, _2020_, in ___Lafayette___ Louisiana.

ANDRE DOGUET, COMMISSIONER
15TH JUDICIAL DISTRICT COURT
KRISTIAN EARLES
JUDGE, 15TH JUDICIAL DISTRICT COURT

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

6 | P a g e
Justin and Anna Pollock Vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Motion to Compel Deposition and Subpoena Duces Tecum

5/5

4/14/2021

Lafayette Parish
Filed Sep 23, 2020 11:21 AM   C-20196583   J
Martina Reaux
Deputy Clerk of Court

JUSTIN POLLOCK

VS.

DR HORTON - GULF COAST

15TH JUDICIAL DISTRICT COURT

DOCKET NO: C-2019-6583 "J"

LAFAYETTE PARISH, LOUISIANA

## JUDGMENT FOR "DEFENDANT D.R. HORTON, INC-GULF COAST'S PEREMPTORY EXCEPTIONS OF PRESCRIPTION/ PEREMPTION AS TO PLAINTIFFS' FIRST AMENDED PETITION

This matter came before this Honorable Court on the 21st day of September, 2020, pursuant to DR Horton - Gulf Coast's "DEFENDANT, D.R. HORTON, INC-GULF COAST'S PEREMPTORY EXCEPTIONS OF PRESCRIPTION/ PEREMPTION AS TO PLAINTIFFS' FIRST AMENDED PETITION" filed on the 2nd day of March, 2020.

Present in court were Justin Pollock, Anna Pollock, and their counsel of record, Lance Beal, and DR Horton, INC- Gulf Coast's counsel of record, Christopher Patin. The Court, having considered the entire suit record of these proceedings, and finding the law and evidence in support hereof, rendered the following judgment with prejudice:

The Defendant's Exception for Prescription/ Peremption is DENIED.

JUDGMENT RENDERED on the 21st day of September, 2020, in Lafayette, Louisiana.

JUDGMENT READ AND SIGNED on this the __05__ day of __October__,

20 _20_ , in __Lafayette__, Louisiana.

KRISTIAN EARLES
JUDGE, 15TH JUDICIAL DISTRICT COURT   Beal & Hernandez, LLP

STATE OF LOUISIANA PARISH OF LAFAYETTE

I HEREBY CERTIFY THAT A CERTIFIED COPY
OF THIS JUDGMENT HAS BEEN
MAILED/SERVED ON ALL PARTIES THIS
October 06, 2020

Katy Melancon

DEPUTY CLERK OF COURT
CC: LANCE BEAL
    CHRISTOPHER M. PATIN

Lance Beal BRN: 38131
600 Jefferson St., Ste. 810
Lafayette, LA 70501
Tele: (337) 991-6263
Fax: (337) 534-0310
Email: lance@lancebeal.com
Attorney for Justin and Anna
Pollock

Lafayette Parish
Filed Oct 08, 2020
C-20196583
J
Kireston Batiste
Deputy Clerk of Court

JUSTIN AND ANNA POLLOCK

SUIT NO. 2019-6583 J

VERSUS

15TH JUDICIAL DISTRICT COURT

PARISH OF LAFAYETTE

D.R. HORTON, INC. - GULF COAST

STATE OF LOUISIANA

### DEFENDANT D.R. HORTON, INC. – GULF COAST'S PEREMPTIVE EXCEPTION OF NO CAUSE OF ACTION AND DILATORY EXCEPTION OF PREMATURITY

NOW INTO COURT, through undersigned counsel, comes Defendant, D.R. Horton — Gulf Coast, Inc. ("D.R. Horton"), and, with a full reservation of rights, who in accordance with the Louisiana Code of Civil Procedure, herein files a *Peremptory Exception of No Cause of Action* and a *Dilatory Exception of Prematurity* in response to the Petition for Damages of the Plaintiffs, Justin and Anna Pollock ("Pollocks"), on grounds set forth more fully in the accompanying memorandum.

1.

D.R. Horton and the Pollocks, (hereinafter "Parties"), executed a written Contract of Sale (hereinafter "Contract") requiring arbitration as the method of dispute resolution of "any claim, controversy or dispute of any kind" between the parties. D.R. Horton was required to construct the Pollocks home ("Home") under the Contract to "industry standard building practices substantially in compliance with the plans and specifications". The Pollocks allege in their petition that D.R. Horton failed to properly install windows during construction of the new home. Further, the Pollocks claim D.R. Horton also failed to remedy the purported faulty window installations via numerous warranty repairs attempts requested by the Pollocks. Any alleged improper window installations and/or warranty repairs, if proven, would necessarily imply D.R. Horton breached the Contract by failing to properly install and/or warranty repair the windows. To that end, Defendant asserts the *Peremptory Exception of No Cause of Action*, La. Code of Civ. Proc. Art. 927(A)(5), and also a *Dilatory Exception of Prematurity*, La. Civ. Code Art. 926(A)(1), on the grounds that the Pollocks have not complied with the terms and procedures of the Contract by instituting arbitration proceedings as the proper method of dispute resolution for breach of Contract claims.

**WHEREFORE,** Defendant, D.R. Horton, Inc. - Gulf Coast, prays that this Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity be granted and that the

court dismiss Plaintiffs' suit at the Plaintiffs' cost. In the alternative, D.R. Horton, Inc. — Gulf Coast requests that the court stay this action and compel the Pollocks to institute arbitration proceedings with respect to their claim.

Respectfully submitted,

**LAPEROUSE, APLC**

By: _____

Edward J. Laperouse, II #29310
Trenton C. Bell #37577
Christopher M. Patin #37963
8034 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 416-0614
Facsimile: (225) 341-8941
**ATTORNEYS FOR DEFENDANT**

Lafayette Parish
Filed Nov 24, 2020 10:22 AM
Martina Reaux
Deputy Clerk of Court

C-20196583

| JUSTIN AND ANNA POLLOCK | * | 15TH JUDICIAL DISTRICT |
| VERSUS | * | DOCKET NO. 2019-6583J |
| D.R. HORTON, INC. – GULF COAST | * | LAFAYETTE PARISH, LOUISIANA |

**PLAINTIFFS' OPPOSITION TO DEFENDANT, D.R. HORTON, INC- GULF COAST'S**
**MEMORANDUM OF LAW IN SUPPORT OF PEREMPTIVE EXCEPTION OF NO**
**CAUSE OF ACTION AND DILATORY EXCEPTION OF PREMATURITY**

MAY IT PLEASE THE COURT:

Plaintiffs, Justin and Anna Pollock (hereinafter referred as "The Pollocks"), through undersigned counsel, respectfully submit this *Memorandum in Opposition to Defendant, D.R. Horton, Inc-Gulf Coast's Memorandum of Law in Support of Peremptive Exception of No Cause of Action and Dilatory Exception of Prematurity* (hereinafter referred as "Memorandum") filed by Defendant, D.R. Horton, Inc.-Gulf Coast (hereinafter referred as "D.R. Horton").

In Defendant's Memorandum, D.R. Horton moves this Honorable Court to bind the Pollocks to the arbitration requirements specified in clause 14 of the *Contract of Sale*.[1]  In the alternative, D.R. Horton moves this Honorable Court to stay this action pending arbitration to be instituted by the Pollocks in accordance with the parties' agreement.[2]  However, as identified herein, the Pollocks have established the existence of separate and unrelated contracts made subsequent to the original *Contract of Sale*. D.R. Horton has failed to carry its burden of proving the existence of a valid and enforceable arbitration agreement pertaining to the new contracts that were made to repair numerous defects throughout the Pollock's home.  Therefore, this Honorable Court should deny D.R. Horton's Peremptive Exception of No Cause of Action and its Dilatory Exception of Prematurity; thus, waiving D.R. Horton's right to arbitration.

**I. BACKGROUND FACTS:**

On or about August 19, 2013, the Pollocks entered into *Contract of Sale* with D.R. Horton to purchase their residence located at 213 Forest Drive, Youngsville, LA 70592, within the Parish of Lafayette.[3]  The *Contract of Sale* conveyed to the Pollocks a 2,460 square foot, single-family

---

[1] See *Contract of Sale* attached hereto as Exhibit "A"
[2] *Id*
[3] *Id*

residence for a total price of $254,900.00.[4]  On or around September 23, 2013, the Pollocks moved into their home, approximately one month after signing the *Contract of Sale*.[5]  The Pollocks have had numerous defects on several occasions which caused them a tremendous amount of emotional distress and mental anguish.

On October 16, 2019, the Pollocks filed a *Petition for Damages* alleging that D.R. Horton constructed a defected home to include both improper window installation and improper HVAC system installation which caused mold growth throughout the home.[6]  On January 27, 2020, the Pollocks filed a *First Amending Petition* alleging that the Pollocks and D.R. Horton entered into a new oral contract on or about July 18, 2019 with Serge Renoux and Thomas Guillory, who are D.R. Horton representatives.[7]  The oral contract was to repair and replace the aforementioned defects within the Pollock's home. D.R. Horton has replaced windows approximately six or seven times, which makes it plausible that windows are not the root defect.  Additionally, multiple warranty claims were filed to repair and replace the defects located throughout the Pollock's home. Furthermore, D.R. Horton's City District Manager, Leslie Gulliksen, testified during a deposition on September 14, 2020 that when a warranty claim is filed then it becomes *an opened obligation in the software that tells Serge what it is and that the warranty repairs have a certain amount of time to repair it* (Emphasis Added).[8]  Furthermore, Ms. Gulliksen testified that the Pollocks submitted a total of six or seven warranty tickets.[9]  Moreover, Ms. Gulliksen testified that she was aware that D.R. Horton cut holes in the walls  and left the wall in that condition.[10]  Ms. Gulliksen testifies that the repairs attempted in July of 2019 were not complete.[11]  Due to the existence of separate and unrelated contracts without arbitration clauses agreed upon, this Honorable Court should rule in favor of the Pollocks and deny the Exceptions of no cause of action and prematurity and the Defendant's request to dismiss this case.

---

[4] *Id*
[5] *Id*
[6] See *Petition for Damages* attached hereto as Exhibit "B"
[7] See *First Amending Petition for Damages* attached hereto as Exhibit "C"
[8] See September 14, 2020 Deposition of Leslie Gulliksen, Page 91, Line 1-13, attached hereto as Exhibit "D"
[9] *Id* at Page 9, Line 6-9.
[10] *Id* at Page 93-94, Lines 18-6.
[11] *Id* at Page 94, Lines 19-22

## II. LAW AND ARGUMENT

### A. The burden is upon D.R. Horton to establish that a valid and enforceable arbitration agreement exists.

In determining whether a party is bound by an arbitration agreement, the Court should apply ordinary contract principles; and a party cannot be required to submit to arbitration a dispute that he has not agreed to submit.[12] "The threshold inquiry [in this case] is whether the parties have agreed to arbitrate the dispute in question.[13] This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement."[14] Here, there is no evidence that the Pollocks entered a valid arbitration agreement with D.R. Horton in the new contracts which were separate and unrelated to the *Contract of Sale* nor does the dispute in question fall within the scope of the arbitration agreement.

### B. This Honorable Court should dismiss the Defendant's request for arbitration as the multiple warranty claims to repair and replace defects in the Pollock's home are unrelated contracts for repair and replacement, which were entered subsequently and separately from the original *Contract of Sale* without any discussion of arbitration.

Pursuant to Louisiana jurisprudence, the Court will first determine if there is a valid agreement to arbitrate between the parties.[15] Louisiana Civil Code Article 1906 provides that a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.[16] Written contracts for construction may be modified by oral contracts and by the conduct of the parties.[17] In *Johnson*, the parties entered into a "Sales and License Agreement" in connection with its purchase of computer hardware and its licensing of an operating agreement.[18]

---

[12] *Tresch v. Kilgore*, 2003-0035 (La. App. 1 Cir. 11/07/03); 868 So.2d 91, 93
[13] *Johnson's, Inc. v. GERS, Inc.*, 34268 (La. App. 2 Cir. 01/24/01); 778 So.2d 740, 743
[14] *Id at 743*
[15] *Id*
[16] Louisiana Civil Code Article 1906
[17] *Pelican Electrical Contractors v. Neumeyer*, 419 So.2d 1,5 (La. App. 4th Cir. 1982).
[18] Supra at note 13.

This agreement provided that "[a]ny dispute arising from this Sales and License Agreement . . . shall be resolved by arbitration."[19]  Approximately four years later, the parties entered into a subsequent agreement, which was unrelated to the first agreement.[20]  The subsequent agreement failed to mention language about an arbitration agreement.[21]  The Court reasoned that the new agreement to purchase the computer system upgrade, which did not contain an arbitration clause, was a new contract unrelated to prior contracts between the parties.[22]  Additionally, the Court reasoned that the first agreement was a sales contract, and the subsequent contract was for an upgrade.[23]  The Court held that the dispute arising from the latest agreement was not subject to earlier agreements' arbitration clauses.[24]

Similar to *Johnson*, on or about August 19, 2013, the Pollocks entered into a *Contract of Sale*, which contained an arbitration clause, for the Defendant to construct the Pollock's home.[25] On or about July 19, 2014, the Pollocks filed a warranty claim for leaking windows located in both the dining room and upstairs bathroom.[26]  On or about July 25, 2014, the Defendant removed the drywall in both the dining room and upstairs bedroom and found mold inside the wall.[27] Approximately two months later, the Pollocks filed an additional warranty claim on the Defendant's website because the Defendant failed to replace the drywall from the July 25, 2014 claim leaving the Pollocks with an open wall for the two-month time period.[28] Additionally, the Defendant's City District Manager of Lafayette, Leslie Gulliksen, testified that the Pollocks filed six or seven warranty claims within a period of six and a half years.[29]  Furthermore, Ms. Gulliksen testified that each warranty claim is ". . . an opened obligation . . ."[30] Ms. Gulliksen proceeded to

---

[19] *Id*
[20] *Id*
[21] *Id*
[22] *Id*
[23] *Id*
[24] *Id*
[25] See Exhibit "A"
[26] See July 19, 2014 warranty claim attached hereto as Exhibit "E"
[27] Need Exhibit
[28] See September 20, 2014 warranty claim attached hereto as Exhibit "F"
[29] *Id* at note 9
[30] *Id* at note 8

testify how the warranty claim establishes the time period in which the Defendant shall repair and replace the defects.[51]

As described by D.R. Horton employees, Ms. Gulliksen, a warranty claim is an *open obligation*, which created a new contract with the Pollocks on each occasion the Pollocks filed a warranty claim. According to Ms. Gulliksen, the parties entered a minimum of six or seven new contracts to repair the Pollocks home after the original *Contract of Sale*.[52] Comparing the Pollock's case to *Johnson*, the *contract for repair and replacement* in this case is unrelated to the original *Contract of Sale* just as the contract of upgrade was unrelated to the original *Contract of Sale in Johnson*. In so much D.R. Horton itself recognizes this inconsistency as evidence in a newly created *Special Addendum to Contract of Sale*, released October of 2020, which clearly states in paragraph three (3), in bold, as the following:

> The parties agree and acknowledge that the Work to be performed hereunder is wholly and expressly related to the original construction of the Home, *and that is an Addendum in no way creates any new or additional contracts or obligations by Seller to Buyer not included under the Contract of Sale*, except as may be expressly stated herein.[53]

D.R. Horton inserted this clause into the *Special Addendum to Contract of Sale* in an attempt to mend the very ambiguity that the Pollocks are arguing. Therefore, this Honorable Court should correlate the Contract for upgrade in the *Johnson* case to the multiple warranty claim contracts in the instant case and conclude, as did the second circuit, that these are separate and unrelated contracts. Thus, the new, unrelated contracts entered separately from the original *Contract of Sale* were without an arbitration clause and this Honorable Court should deny the Defendant's exception of prematurity and no cause of action.

**C. The parties entered an unrelated oral contract without discussion of an arbitration clause following the original *Contract of Sale*.**

A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.[54] The Louisiana Law provide that an oral contract not reduced to

---

[51] *Id* at note 8
[52] *Id* at note 9
[53] See *Special Addendum to Contract of Sale* attached hereto as Exhibit "G"
[54] Louisiana Civil Code Article 1906

writing for a price or value of $500.00 must be proved by at least one witness and other corroborating circumstances.[35] To meet the burden of proving an oral contract by a witness and other corroborating circumstances, a plaintiff may serve as her own witness and the other corroborating circumstances may be general and need not prove every detail of the Plaintiff's case.[36] The corroborating evidence, however, must come from a source other than the Plaintiff.[37]

In the instant case before us, a conversation took place between four people in which an oral contract was formed. The conversation took place between the Pollocks and two D.R. Horton representative. In addition to the conversation that took place, corroborating evidence exist in recording transcript. The oral agreement evidenced in the transcripts pertaining to the oral contract went as follows:

D.R. Horton Representative 1:      "No, we're not gonna do that, I'm gonna fix it."
D.R. Horton Representative 2:      "He's gonna fix it."
Pollock:                          "All right."

The D.R. Horton representative went into detail about the repair process:

D.R. Horton Representative:        "Let me – I'm pretty serious whenever I'm going to look at some – get some engineering done to see what it would take to put a brick wall right there."[38]

However, the parties never discussed any arbitration clause during the conversation in which the oral contract was formed. Furthermore, applying ordinary contract principles, the Pollocks are not required to submit to arbitration as they neither submitted to arbitration in the contracts for repair stemming from the warranty claims nor did they submit to one in the above-mentioned oral contract. Therefore, the Defendants objection to the exception of prematurity and no cause of action should be denied by this Honorable Court.

---

[35] *Hodson v. Daron Cavaness Builder, Inc.*, 2017-1235 (La. App. 1st Cir. 02/27/18); 243 So.3d 597.
[36] *Id*
[37] *Id*
[38] See Recording Transcript between the Pollocks and D.R. Horton attached hereto as Exhibit "H"

**D.  In the alternative, this Honorable Court should conclude D.R. Horton waived their rights to arbitration after examining the factors laid out in *Simpson v. Pep Boys.***

Waiver of arbitration will be found when the party seeking arbitration substantially participates in the judicial process to the detriment or prejudice of the other party.[39] Participation in litigation standing alone will not constitute waiver.[40] Litigation in court is only a factor to be considered but is not determinative of whether arbitration has been waived.[41] In *Simpson*, the Court applied the *Thomas* test to the facts in the *Simpson* case.  The three-pronged test to find waiver of the right to arbitration where the party claiming the right to arbitrate consist of the following: (1) knew of an existing right to arbitrate; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.[42]

Applying the *Thomas* test to the facts of the *Simpson* case, the Court reasoned that Pep Boys waived its right to arbitration.  First, Pep Boys knew of the arbitration agreement because it drafted the agreement.[43] Second, Pep Boys acted inconsistently with that right by participating in the litigation process, including discovery, for over two years.[44] Lastly, Pep Boys obtained answers to interrogatories and took advantage of the more extensive discovery process.  Thus, the Court hold that Pep Boys waived its right to arbitrate.[45]

Similar to *Simpson*, this Honorable Court should conclude that D.R. Horton waived its right to arbitration.  Applying the *Thomas* test, D.R. Horton knew of the arbitration agreement because it drafted the agreement for the parties to sign.[46] Second, D.R. Horton acted inconsistently with that right by participating in the litigation process for approximately thirteen (13) months, including significant discovery.[47] Lastly, to force the Pollocks to arbitrate at this point would result

---

[39] *Simpson v. Pep Boys*, 2003-0358 (La. App. 4th Cir. 04/10/03); 847 So.2d 617, 623
[40] *Id*
[41] *Id*
[42] *Id* at 624
[43] *Id*
[44] *Id*
[45] *Id*
[46] *See* Exhibit "A"
[47] *See* Exhibit "B"

in prejudice. D.R. Horton brings the arbitration clause to the attention of this Honorable Court only after months of significant discovery, negotiations, and litigation have taken place. Furthermore, D.R. Horton filed multiple motions throughout the process of litigation and failed to mention the arbitration clause in the last thirteen (13) months of litigation. The purpose of arbitration is a speedy alternative to litigation; however, arbitration is no longer an option as a speedy alternative in the present case. If D.R. Horton would have brought this to the attention of the Pollocks thirteen (13) months ago, justice may have been quickly served. However, D.R. Horton decided to wait and hold this tactic in its back pocket and failed to mention the clause until now. Therefore, arbitration is no longer a speedy alternative, thus, this Honorable Court should conclude that D.R. Horton waived its right to arbitration.

**D. Conclusion**

Following Louisiana jurisprudence, this Honorable Court should deny the Defendant's exception of prematurity and no cause of action in favor of the Pollocks and against the Defendants and conclude that the contracts entered into by both parties following the original contract were unrelated and failed to discuss an arbitration clause. Thus, the parties never agreed to submit to an arbitration clause. Furthermore, this Honorable Court should find in favor of the Pollocks and against the Defendant in that the Defendant waived its right to arbitration.

Respectfully submitted,

**Beal and Hernandez L.L.P.**

LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
600 JEFFERSON ST. SUITE 810
LAFAYETTE, LA 70501
TELEPHONE: (337)991-6263
FACSIMILE: (337)534-0310
*Attorneys for Justin and Anna Pollock*

Lafayette Parish
Filed Dec 03, 2020 3:55 PM
Abby Brinkman
Deputy Clerk of Court
E-File Received Dec 03, 2020 3:48 PM

C-20196583
J

| | |
|---|---|
| JUSTIN and ANNA POLLOCK | 15TH JUDICIAL DISTRICT COURT |
| versus | DOCKET: 2019-6583 J |
| D.R. HORTON, INC. – GULF COAST | LAFAYETTE, LOUISIANA |

## REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO D.R. HORTON, INC.— GULF COAST'S EXCEPTIONS OF NO CAUSE OF ACTION AND PREMATURITY

Defendant, D.R. Horton, Inc.—Gulf Coast ("DRH") respectfully files this Reply Memorandum to the Memorandum in Opposition submitted by Justin and Anna Pollock ("Plaintiffs") to DRH's Exceptions of No Cause of Action and Prematurity. In addition to the ARBITRATION CLAUSE expressly referenced in DRH's Memorandum in Support of its Exception, the Contract for Sale ("Contract"), signed by the Pollocks, contains the following pertinent clause:

> *"THIS CONTRACT constitutes the entire agreement between the parties... No amendment or modification of the Contract shall be enforceable unless made in writing and signed and initialed by the parties."[1]*

The Court should reject Plaintiffs' attempt to escape clear, concise, conspicuous and unambiguous contract language, that the *Pollocks themselves expressly and specially initialed,* requiring arbitration as a means of dispute resolution of *"any claim, controversy or dispute of any kind arises between Buyer and Seller, whether arising from tort, the Contract, any breach of the Contract in any way related to this transaction …".[2]*

The Plaintiffs are blatantly attempting to convolute a simple issue, namely, that their allegations of water infiltration and purported failed repairs by DRH are warranty claim disputes to be resolved under the arbitration provision in the Contract. On the face of their pleadings, Plaintiffs unmistakably contend DRH was unable to fix this purported condition after "six or seven" repair attempts over a period of six years.[3] Irrespective of whether these issues are "warranty claims" or not, they certainly "relate" to the Contract of Sale whereby the Pollocks purchased their home. To insinuate that disputes related to repairs of a condition that allegedly stemmed from the construction of the house are somehow not governed by the only Contract

---

[1] Exhibit A – Contract for Sale
[2] *Id.*
[3] Exhibit B - Plaintiff's Petition for Damages

1/5

signed by the parties, and are instead governed by some oral agreement made by two field employees of DRH, is absurd.

In a likewise outrageous attempt to circumvent their arbitration agreement, the Plaintiffs argue that DRH is now too late to bring its exception of prematurity and no cause of action. Yet, DRH has not even filed an Answer in these proceedings primarily due to the continual delays, requests for extensions and obstacles presented by the Pollocks throughout the pendency of this litigation. Furthermore, the Pollocks are the only party that has attempted to engage in discovery during this initial exceptions phase of this litigation, which the parties are still in. DRH exception of prematurity and no cause of action is timely and should be granted by this Honorable Court.

<u>Discussion</u>

It is well settled that Louisiana law favors arbitration.[*] In addition, the arbitration clause at issue expressly references the Federal Arbitration Act, which has been overwhelmingly held to require courts, including state courts, to broadly enforce agreements to arbitrate.[5]

In their opposition brief to DRH's *Exceptions of Prematurity and No Cause of Action*, Plaintiffs try to twist a single word used by DRH's manager in her deposition—the word "obligation"—to suggest it means something different than the plain context in which it was used. They further cite irrelevant cases and cherry-pick parts of recorded conversations of DRH field employees to try steer this Honorable Court away from one simple point: the Plaintiffs' claims all stem from deficiencies allegedly existing in the original construction of their home, and thus fall under the Contract, which requires arbitration for dispute resolution. In a relentless effort to prop up the nonsensical idea that a single warranty claim somehow preempts the Contract, the Plaintiffs go through exhaustive efforts to manipulate the facts and muddy the waters.

I.  **Despite Plaintiffs attempts to mislead and confuse, the Plaintiffs' own pleadings set forth a prima facie case that all warranty claims are part of the Contract for Sale.**

Despite their attempts to confuse this Court and create a tangled web of facts, the Plaintiffs' own allegations are proof the warranty claims cannot be considered separate from the Contract. For example, paragraphs 55 and 56 of the Plaintiffs' Petition ties their claims to alleged "improper installation of windows, drains, etc." and "countless attempts to...repair the

---

[*] *Aguillard v. Auction Mgmt. Corp.*, 04-2804 (La. 06/29/05); 908 So.2d 1, 7.
[5] *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.* 460 U.S. 1, 24-27 (1983).

leakage and house altogether…".[5]  In fact, the Petition goes into great and expansive detail about how the alleged defects supposedly existed since the time they moved into the house. These claims obviously "relate" to the transaction comprising the Contract of Sale.

In *now* trying to tie their claims to some fictional subsequent "oral contract," the Plaintiffs cite *Johnson's, Inc. v. GERS, Inc.* in an attempt to make their point; however, the case at bar is notably distinguishable from *Johnson*.  In *Johnson* the dispute was whether or not a written contract, which included an arbitration clause, for the sale of computers would govern a later written contract, without an arbitration clause, for upgrades to same computers years later.   Unlike *Johnson* where the written contract in dispute was related to improvements to computers not contemplated at the time of the original contract for sale, this case involves a dispute over defects alleged to be inherent in the thing sold, not some later improvement or upgrade thereof.  Considering the Plaintiffs' allegations on the face of their lawsuit describe water leak claims at windows beginning the year they moved into the house and continuing/reoccurring for over six years, the Plaintiffs themselves set forth the fact that their claims are tied to the Contract of Sale, and thus the arbitration provision.

Next, the Plaintiffs blatantly attempt to mislead the Court related to the deposition of DRH's 1442 corporate representative, Leslie Gulliksen. The Plaintiffs call attention to the use of the word "obligation" by Ms. Gulliksen, in describing the process by which a warranty claim is opened in DRH's electronic system and assigned to the appropriate service team member to handle the warranty claim.  There is absolutely no connotation or association between the word "obligation" in the context that Ms. Gulliksen used it and the inference that some new contract or contracts might have been formed that could remove the parties' mutual agreement to arbitrate. There is simply no basis for the deceitful insinuations and leaps by the Plaintiffs. At any rate, Ms. Gulliksen had notably clarified her testimony, as was her right, by substituting the term "*warranty claim*" for the word "*obligation,*" before this issue was even raised. (See Exhibit A – Errata Sheet from the Art. 1442 Deposition of D.R. Horton, Inc.—Gulf Coast.).[7]  The Plaintiffs' representations to the Court regarding this passage should therefore be rejected, if not reprimanded.

**II.      DRH has not waived its right to arbitrate through its procedural exceptions to the Plaintiffs' lawsuit.**

---

[5] See Plaintiffs' Petition for Damages, paragraphs 55 and 56.
[7] Exhibit C - Errata Sheet for Leslie Gulliksen

The Plaintiffs' claims that DRH has gone too far in its litigation are not supported under the law. The Plaintiffs cite *Simpson v. Pep Boys* as a controlling case to determine if a party to a suit has waived its right to arbitrate in yet another attempt to circumvent the arbitration provision of the Contract.[8] In *Pep Boys*, the court found *Pep Boys* had acted inconsistent with its arbitration clause by engaging in litigation and extensive discovery for over two years and sufficiently enough to set a trial date in the matter. Here, no trial date has been set and the only litigation has been related to preliminary procedural *exceptions* to the Plaintiffs' absurd lawsuit. DRH has not even been required to file an Answer, yet, under procedural law.

The instant case is more akin to *Velazquez v. Brand Energy & Infrastructure Servs.*[9] In *Velazquez*, the parties had a written employment contract that included an agreement to arbitrate disputes.[10] The Plaintiff brought suit for alleged injuries sustained from the purported lack of personal protective equipment required to be furnished by the defendant.[11] The defendant answered the Plaintiff's petition and filed a dilatory exception thereafter.[12] Thereafter, the parties engaged in discovery, including interrogatories and requests for product, whereby the defendant ultimately sought arbitration seven months from when it was served with the suit.[13] The court held such pre-suit activity does not invoke the judicial process and cannot support a finding of waiver.[14] In this instant case, DRH has conducted no discovery of its own, instead choosing to file peremptory exceptions to seek removal from the case. DRH filed its initial peremptory exception of peremption/prescription December of 2019. Further and while awaiting hearings on its exceptions, DRH has responded to all the Plaintiffs' discovery requests, including the requested deposition of its 1442 Corporate Representative. Although this case has been going on for just over one year, a major part of the reason for that length of time was judicial impact caused by COVID-19 and the Plaintiffs' own efforts to seek extensions and delays. The aforementioned peremption/prescription exceptions were set to be heard on May 4, 2020; however, due to delays from, among other things, the COVID-19 pandemic, the hearing did not take place until September 21, 2020. Upon an unsuccessful ruling of its previous peremptory exception in September, DRH timely filed its *Exceptions of No Cause of Action and Prematurity*

[8] *Simpson v. Pep Boys - Manny Moe & Jack, Inc.*, 2003-0358 (La. App. 4 Cir. 04/09/03); 847 So.2d 617
[9] *Velazquez v. Brand Energy & Infrastructure Servs.*, 781 F. Supp. 2d 370 (W.D. La. 2011)
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

4/14/2021

to compel this matter to arbitration under the Contract.  Exactly like in *Velazquez*, DRH cannot be said to have waived its rights to arbitration under the parties' Contract.

### Conclusion

For the foregoing reasons and authority cited requiring arbitration between the parties, DRH respectfully requests the Court to grant its exception as previously pled.

Respectfully submitted,

LAPEROUSE, APLC

By: _____
Edward J. Laperouse, II #29310
Trenton Ball #37577
Christopher M. Patin #37963
8034 Jefferson Hwy.
Baton Rouge, La. 70809
Telephone:  (225) 416-0614
Facsimile:  (225) 341-8941

**ATTORNEYS FOR**
**D.R. Horton, Inc. - Gulf Coast**

Lafayette Parish
Filed Oct 13, 2020 11:50 AM
Misty Bragg
Deputy Clerk of Court
FAX Received Oct 06, 2020

C-20196583
J

JUSTIN AND ANNA POLLOCK

VERSUS

D.R. HORTON, INC. - GULF COAST

SUIT NO. 2019-6583 J

15TH JUDICIAL DISTRICT COURT

PARISH OF LAFAYETTE

STATE OF LOUISIANA

## RULE TO SHOW CAUSE

Considering the foregoing *Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity* filed on behalf of the Defendant, D.R. Horton, Inc. – Gulf Coast:

IT IS ORDERED, that Justin and Anna Pollock show cause on the ___7___ day DECEMBER___, 2020 at _10_ o'clock_.m. why· D.R. Horton, Inc. – Gulf Coast's *Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity* should not be granted.

Signed this __20_ day of _October_ 2020, at _LAFAYETTE_, Louisiana.

_____
15th Judicial District Judge

PLEASE SERVE:

Justin and Anna Pollock
213 Forest Grove Dr.
Youngsville, La. 70592

PLEASE NOTIFY:

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

1

Lafayette Parish
Filed Dec 09, 2020 1:17 PM
Morgan Foreman
Deputy Clerk of Court

C-20196583
J

| | |
|---|---|
| **JUSTIN POLLOCK** | **15TH JUDICIAL DISTRICT COURT** |
| **VS.** | **DOCKET NO: C-2019-6583 "J"** |
| **DR HORTON - GULF COAST** | **LAFAYETTE PARISH, LOUISIANA** |

## JUDGMENT FOR "DEFENDANT D.R. HORTON, INC-GULF COAST'S PEREMPTIVE EXCEPTION OF NO CAUSE OF ACTION AND DILATORY EXCEPTION OF PREMATURITY"

This matter came before this Honorable Court on the 7th day of December, 2020, pursuant to DR Horton - Gulf Coast's "DEFENDANT D.R. HORTON, INC-GULF COAST'S PEREMPTIVE EXCEPTION OF NO CAUSE OF ACTION AND DILATORY EXCEPTION OF PREMATURITY" filed on the 10th day of October, 2020.

Present in court were Justin Pollock, Anna Pollock, and their counsel of record, Lance Beal, and DR Horton, INC- Gulf Coast's counsel of record, Christopher Patin. The Court, having considered the entire suit record of these proceedings, and finding the law and evidence in support hereof, rendered the following judgement with prejudice.

The Defendant's Peremptive Exception of No Cause of Action and Dilatory Exception of Prematurity is DENIED.

**JUDGMENT RENDERED** on the 7nd day of December 2020, in Lafayette, Louisiana.

**JUDGMENT READ AND SIGNED** on this the __18__ day of __December__, 20 __20__, in __LAFAYETTE__, Louisiana.

**KRISTIAN EARLES**
JUDGE, 15TH JUDICIAL DISTRICT COURT

STATE OF LOUISIANA PARISH OF LAFAYETTE

**Beal & Hernandez, LLP**

I HEREBY CERTIFY THAT A CERTIFIED COPY
OF THIS JUDGMENT HAS BEEN
MAILED/SERVED ON ALL PARTIES THIS
December 18, 2020

Lance Beal BRN: 38131
600 Jefferson St., Ste. 810
Lafayette, LA 70501
Tele: (337) 991-6263
Fax: (337) 534-0310
Email: lance@lancebeal.com
**Attorney for Justin and Anna Pollock**

**DEPUTY CLERK OF COURT**
CC: LANCE BEAL
CHRISTOPHER PATIN

Justin Pollock vs. DR Horton - Gulf Coast
15TH JUDICIAL DISTRICT COURT
Suit No.: C-2019-6583 Division: J
Parish of Lafayette, State of Louisiana

Lafayette Parish
Filed Dec 16, 2020 2:42 PM
Martina Reaux
Deputy Clerk of Court
E-File Received Dec 16, 2020 2:14 PM

C-20196583
J

| | |
|---|---|
| JUSTIN and ANNA POLLOCK | 15TH JUDICIAL DISTRICT COURT |
| versus | DOCKET: 2019-6583 J |
| D.R. HORTON, INC. – GULF COAST | LAFAYETTE, LOUISIANA |

### NOTICE OF INTENT TO APPLY FOR SUPERVISORY WRIT, MOTION FOR RETURN DATE AND MOTION FOR EXTENSION OF TIME TO FILE WRIT APPLICATION

TO:　Honorable Kristian Earles
　　　Judge, Section J
　　　15th Judicial District Court
　　　800 S Buchanan St
　　　Lafayette, LA 70501

**NOW INTO COURT**, comes, Defendant, D.R. Horton – Gulf Coast ("D.R. Horton"), in accordance with Article 2201 of the Louisiana Code of Civil Procedure and Rule 4 of the Uniform Rules of the Louisiana Courts of Appeal, file this notice of its intent to apply to the Third Circuit Court of Appeal for supervisory writ concerning the ruling rendered in open court by Judge Kristian Earles on December 7, 2020, denying D.R. Horton's *Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity*.

Additionally, in accordance with Rule 4-3 of the Uniform Rules of Louisiana Courts of Appeal, D.R. Horton hereby moves this Honorable Court for an order setting a return date of January 6, 2021 for said Application for Supervisory Writ.

Furthermore, D.R. Horton seeks and extension of time pursuant to Rule 4-3 of the Uniform Rules of the Louisiana Courts of Appeal within which to file its application to the Third Circuit Court of Appeal. This case has not been set for trial and the granting of an extension will not in any way delay these proceedings.

Accordingly, D.R. Horton requests that this Honorable Court extend the time within which to file their Application for Supervisory Writ until January 29, 2021, as authorized by Rule 4-3 of the Uniform Rules of the Louisiana Courts of Appeal.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully submitted,

**LAPEROUSE, APLC**

By: /s/ Christopher M. Patin
Edward J. Laperouse, II #29310
Trenton Ball #37577
Christopher M. Patin #37963
8034 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone:  (225) 416-0614
Facsimile:  (225) 341-8941
**ATTORNEYS FOR**
**D.R. Horton, Inc. - Gulf Coast**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing pleading has been served upon the following counsel of record via facsimile, first class U.S. mail (properly addressed and prepaid), or electronic mail to:

Mr. Lance Beal
Attorney at Law
405 W. Main St. – Suite 108
Lafayette, LA 70501
*Attorney for Plaintiff*

Baton Rouge, Louisiana, this 16th day of December, 2020.

/s/  Christopher M. Patin
**Christopher M. Patin**

Lafayette Parish
Filed Jan 14, 2021 9:17 AM
Hannah Moscovis
Deputy Clerk of Court

C-20196583
J

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
P.O. Box 16577
Lake Charles LA 70616
(337) 433-9403

January 11, 2021

Dear Counsel:

The Application for Writs by D.R. Horton, Inc. - Gulf Coast in the case entitled

    DOCKET NO.: 21  00005-CW

    **JUSTIN POLLOCK AND**
    **ANNA POLLOCK**
    **VERSUS**
    **D.R. HORTON, INC. - GULF COAST**
    **Writ Application from Lafayette Parish Case No. 20196583**

    **Trial Judge: Hon. Kristian Dennis Earles**

has been received and filed as of the hand delivery date 1/5/2021.

Cordially yours,

Renée R. Simien, Clerk of Court

**Mailing List:**
    Hon. Kristian Dennis Earles
    Christopher M. Patin, Counsel for the Applicant
    Edward J. Laperouse, II, Counsel for the Applicant
    Trenton C. Ball, Counsel for the Applicant
    Lance C. Beal, Counsel for the Respondent
    Hon. Louis J. Perret, Clerk of Court

Lafayette Parish
Filed Dec 16, 2020 11:46 AM          C-20196583
Martina Reaux                              J
Deputy Clerk of Court
E-File Received Dec 16, 2020 11:39 AM

JUSTIN AND ANNA POLLOCK                    SUIT NO. 2019-6583 J

VERSUS                                     15TH JUDICIAL DISTRICT COURT

                                           PARISH OF LAFAYETTE

D.R. HORTON, INC. - GULF COAST             STATE OF LOUISIANA

### ANSWER, AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' PETITION AND AMEMDED PETITION FOR DAMAGES

    **NOW INTO COURT,** through undersigned counsel, comes defendant, D.R. Horton, Inc. - Gulf Coast ("DRH"), who provide the following Answers and Affirmative Defenses to the Petition filed by plaintiff, Justin and Anna Pollock (referred to as "Plaintiffs'), as follows:

### ANSWER

1.

    The allegations contained in Paragraph 1 of the Plaintiffs' Petition for Damages are admitted.

2.

    The allegations in Paragraph 2 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

3.

    The allegations in Paragraph 3 of the Plaintiffs' Petition for Damages are denied as written.

4.

    The allegations in Paragraph 4 of the Plaintiffs' Petition for Damages are denied as written.

5.

    The allegations in Paragraph 5 of the Plaintiffs' Petition for Damages are denied as written.

6.

    The allegations contained in Paragraph 6 the Plaintiffs' Petition for Damages are denied as written.

7.

    The allegations in Paragraph 7 of the Plaintiffs' Petition for Damages are denied for lack

4/14/2021

of sufficient information to justify a belief therein.

8.

The allegations in Paragraph 8 of the Plaintiffs' Petition for Damages are denied as written.

9.

The allegations in Paragraph 9 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

10.

The allegations in Paragraph 10 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

11.

The allegations in Paragraph 11 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

12.

The allegations in Paragraph 12 of the Plaintiffs' Petition for Damages are denied as written.

13.

The allegations in Paragraph 13 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

14.

The allegations in Paragraph 14 of the Plaintiffs' Petition for Damages are denied as written.

15.

The allegations in Paragraph 15 of the Plaintiffs' Petition for Damages are denied as written.

16.

The allegations in Paragraph 16 of the Plaintiffs' Petition for Damages are denied as written.

17.

The allegations in Paragraph 17 of the Plaintiffs' Petition for Damages are denied as written.

18.

The allegations in Paragraph 18 of the Plaintiffs' Petition for Damages are denied as written.

19.

The allegations in Paragraph 19 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

20.

The allegations in Paragraph 20 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

21.

The allegations in Paragraph 21 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

22.

The allegations in Paragraph 22 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

23.

The allegations in Paragraph 23 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

4/14/2021

24.

The allegations in Paragraph 24 of the Plaintiffs' Petition for Damages are denied as written.

25.

The allegations in Paragraph 25 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

26.

The allegations in Paragraph 26 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

27.

The allegations in Paragraph 27 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

28.

The allegations in Paragraph 28 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

29.

The allegations in Paragraph 29 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

30.

The allegations in Paragraph 30 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

31.

The allegations in Paragraph 31 of the Plaintiffs' Petition for Damages are denied as written.

4/14/2021

32.

The allegations in Paragraph 32 of the Plaintiffs' Petition for Damages are denied as written.

33.

The allegations in Paragraph 33 of the Plaintiffs' Petition for Damages are denied as written.

34.

The allegations in Paragraph 34 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

35.

The allegations in Paragraph 35 of the Plaintiffs' Petition for Damages are denied as written.

36.

The allegations in Paragraph 36 of the Plaintiffs' Petition for Damages are denied as written.

37.

The allegations in Paragraph 37 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

38.

The allegations in Paragraph 38 of the Plaintiffs' Petition for Damages are denied as written.

39.

The allegations in Paragraph 39 of the Plaintiffs' Petition for Damages are denied as written.

4/14/2021

40.

The allegations in Paragraph 40 of the Plaintiffs' Petition for Damages are denied as written.

41.

The allegations in Paragraph 41 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

42.

The allegations in Paragraph 42 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

43.

The allegations in Paragraph 43 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

44.

The allegations in Paragraph 44 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

45.

The allegations in Paragraph 45 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

46.

The allegations in Paragraph 46 of the Plaintiffs' Petition for Damages are denied as written.

47.

The allegations in Paragraph 47 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

48.

The allegations in Paragraph 48 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

49.

The allegations in Paragraph 49 of the Plaintiffs' Petition for Damages are denied as written.

50.

The allegations in Paragraph 50 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

51.

The allegations in Paragraph 51 of the Plaintiffs' Petition for Damages are denied as written.

52.

The allegations in Paragraph 52 of the Plaintiffs' Petition for Damages require no response from the Defendant, but to the extent a response is required, the allegations are denied.

53.

The allegations in Paragraph 53 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

54.

The allegations in Paragraph 54 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

55.

The allegations in Paragraph 55 of the Plaintiffs' Petition for Damages are denied.

56.

4/14/2021

The allegations contained in Paragraph 56 of the Plaintiffs' Petition for Damages do not require an answer from Defendant, but to the extent an answer is required, such allegations are denied.

57.

The allegations in Paragraph 57 of the Plaintiffs' Petition for Damages are legal conclusions of law and should be referred to the court for resolution.  To the extent an answer is required, the allegations are denied as written.

58.

The allegations in Paragraph 58 of the Plaintiffs' Petition for Damages are denied.

59.

The allegations in Paragraph 59 of the Plaintiffs' Petition for Damages are denied as written.

60.

The allegations in Paragraph 60 of the Plaintiffs' Petition for Damages are denied as written

61.

The allegations in Paragraph 61 of the Plaintiffs' Petition for Damages are denied as written.

62.

The allegations in Paragraph 62 of the Plaintiffs' Petition for Damages are denied as written.

63.

The allegations in Paragraph 63 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

64.

4/14/2021

The allegations in Paragraph 64 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

65.

The allegations in Paragraph 65 of the Plaintiffs' Petition for Damages are denied for lack of sufficient information to justify a belief therein.

66.

The allegations in Paragraph 66 of the Plaintiffs' Petition for Damages are denied as written.

67.

The allegations in Paragraph 67 of the Plaintiffs' Petition for Damages are denied as written.

68.

The allegations in Paragraph 68 of the Plaintiffs' Petition for Damages are denied.

69.

The allegations in Paragraph 69 of the Plaintiffs' Petition for Damages are denied as written.

70.

The allegations in Paragraph 70 of the Plaintiffs' Petition for Damages are denied as written.

71.

The allegations in Paragraph 71 of the Plaintiffs' Petition for Damages are denied.

72.

The allegations in Paragraph 72 of the Plaintiffs' Petition for Damages are denied.

## AFFIRMATIVE DEFENSES

D.R. Horton, Inc. – Gulf Coast asserts the following Affirmative Defenses:

1.

The claims asserted by Plaintiffs fail to state a cause of action.

2.

The Plaintiffs failed to arbitrate the matter as required by contract.

3.

The Plaintiffs claims have prescribed and are perempted under La. R.S. 9:3141 *et seq.*

4.

The Defendant asserts that it performed all duties owed under the contract other than any duties which were prevented or excused, and therefore never breached any contract between the parties.

5.

The Defendant asserts that the Plaintiffs have failed to take reasonable steps to reduce or minimize the damages experienced.

6.

Defendant pleads, as an affirmative defense, the immunity conferred by La. R.S. 9:2771.

7.

Plaintiffs breached the contract between the parties.

8.

Defendant avers that the alleged damages of Plaintiffs, which alleged damages are hereby specifically denied, were the result of fault and/or negligence on behalf of third parties for whom Defendants are not responsible or legally liable, which fault and/or negligence of said third parties is hereby plead in bar to or diminution of any recovery by Plaintiffs.

9.

Defendant avers that the alleged damages sustained by Plaintiffs, which damages are hereby specifically denied, were the result of the comparative negligence and/or fault of the Plaintiffs, the particulars of which will be shown at trial of on the merits of this litigation,

4/14/2021

which fault and/or negligence is hereby a bar to any recovery by Plaintiffs.

10.

Defendant pleads an Act of God and/or force majeure as an affirmative defense.

11.

Defendant avers that plaintiff has failed to mitigate damages, if any.

12.

Defendant pleads accord and satisfaction as an affirmative defense.

13.

Defendants pleads estoppel, transaction and compromise, extinguishment of the obligation and accord and satisfaction as affirmative defenses.

14.

Defendants pray for and are entitled to a trial by jury.

15.

Plaintiffs failed to comply with required statutory and contractual conditions precedent.

**WHEREFORE,** Defendant, D.R. Horton, Inc. — Gulf Coast, prays that its answer and affirmative defenses to Plaintiffs principal demand be deemed good and sufficient, and that after all legal delays have run and due proceedings are had, there be judgment rendered herein in favor of D.R. Horton, Inc. – Gulf Coast, dismissing Plaintiffs' claims, with prejudice, at Plaintiffs' costs, for notice of judgment, trial by jury, and for all other necessary and equitable relief.

Respectfully submitted,

**LAPEROUSE, APLC**

By:  /s/ Christopher M. Patin
Edward J. Laperouse, II #29310
Trenton C. Bull #37577
Christopher M. Patin #37963
8034 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 416-0614
Facsimile: (225) 341-8941
**ATTORNEYS FOR D.R. HORTON, INC. – GULF COAST**

Lafayette Parish
Filed Dec 22, 2020 2:58 PM
Martina Reaux
Deputy Clerk of Court

C-20196583

| JUSTIN AND ANNA POLLOCK | * | 15TH JUDICIAL DISTRICT |
| VERSUS | * | DOCKET NO. 2019-6583J |
| D.R. HORTON, INC. -- GULF COAST | * | LAFAYETTE PARISH, LOUISIANA |

## MOTION TO STRIKE

NOW INTO COURT, through the undersigned counsel, come the Plaintiff, JUSTIN AND ANNA POLLOCK, who files this Motion to Strike to Defendant's *Answer, and Affirmative Defenses to Plaintiff's Petition and Amended Petition for Damages*, and respectfully avers the following:

1.

On October 16, 2019, the Pollocks filed a *Petition for Damages* in the Fifteenth Judicial District Court against the Defendant.

2.

On January 27, 2020, the Pollocks filed a *First Amending Petition* against the Defendant alleging that the Pollocks and two representatives of D.R. Horton entered an oral contract to repair and replace the Pollocks' home, which was subsequent to the original *Contract of Sale*.

3.

On March 2, 2020, Defendant filed a *Peremptory Exception of Peremption/Prescription* alleging that the Pollocks' claims were barred by the New Home Warranty Act.

4.

This Honorable Court ruled in favor of the Pollocks and denied the Defendant's *Peremptory Exception of Peremption/Prescription* with prejudice.

5.

On October 2, 2020, the Defendant filed a *Peremptory Exception of No Cause of Action and a Dilatory Exception of Prematurity*.

4/14/2021

6.

This Honorable Court denied both of the Defendant's Exceptions with prejudice and ruled in favor of the Pollocks.

7.

On December 18, 2020, Defendants filed its *Answer, and Affirmative Defenses to Plaintiffs' Petition and Amended Petition for Damages.* ("Answer")

8.

In Paragraph 1 under the Affirmative Defenses section of the Defendant's Answer, the Defendant alleges the following: "The Claims asserted by Plaintiff fail to state a cause of action."

9.

In Paragraph 2 under the Affirmative Defenses section of the Defendant's Answer, the Defendant alleges the following: "The Plaintiffs failed to arbitrate the matter as required by contract."

10.

In Paragraph 3 under the Affirmative Defenses section of the Defendant's Answer, the Defendant alleges the following: "The Plaintiffs' claims have prescribed and are perempted under La. R.S. 9:3141 *et seq.*

11.

For the reasons more particularly contained in the Pollocks' *Memorandum in Support of the Motion to Strike*, it is respectfully requested that this Honorable Court strike Paragraphs 1, 2 and 3 of the Affirmative Defenses section in the Defendant's Answer, casting Defendant with all costs associated with the bringing of this rule.

**WHEREFORE,** Plaintiff/Movant, **JUSTIN AND ANNA POLLOCK** pray that:

1. The Defendant, D.R. Horton, Inc-Gulf Coast, be served with a copy of the Motion to Strike;

4/14/2021

2. That a rule to show cause issue herein setting a date and time for this Honorable Court to hold a hearing on the above Motion to Strike;

3. That after hearing on this matter, that Paragraph 1, 2 and 3 of the Affirmative Defenses in the Defendant's Answer be stricken in their entirety or dismissed at Defendant's cost;

4. For all general and equitable relief as provided by law.

Respectfully submitted,

Beal & Hernandez, L.L.P.

BY: _____
LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
600 JEFFERSON ST. SUITE 810
LAFAYETTE, LA 70501
TELEPHONE: (337)-991-6263
FACSIMILE: (337)-534-0310
*Attorneys for Plaintiffs, Justin and Anna Pollock*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing pleading has been served upon counsel for all parties via one or more of the following located at 8034 Jefferson Highway, Baton Rouge, Louisiana 70809.

☐ Hand Delivery               ☑ Electronic mail
☐ Facsimile                   ☐ U.S. Mail, Postage prepaid

**SIGNED** at Lafayette, Louisiana, on this 22nd day of December, 2020.

_____
LANCE C. BEAL

3/4

Lafayette Parish
Filed Jan 11, 2021 3:25 PM
Abby Brinkman
Deputy Clerk of Court
E-File Received Jan 11, 2021 2:54 PM
C-20196583
J

| | |
|---|---|
| JUSTIN and ANNA POLLOCK | 15TH JUDICIAL DISTRICT COURT |
| versus | DOCKET: 2019-6583 J |
| D.R. HORTON, INC. – GULF COAST | LAFAYETTE, LOUISIANA |

### DEFENDANT, D.R. HORTON, INC. - GULF COAST'S, OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE PARAGRAPHS 1, 2, AND 3 OF ITS AFFIRMATIVE DEFENSES

MAY IT PLEASE THE COURT:

Defendant, D.R. Horton, Inc. – Gulf Coast ("D.R. Horton" or "Defendant"), submits this *Opposition to Plaintiffs' Motion to Strike Paragraphs 1, 2, and 3 of Its Affirmative Defenses* for reasons explained herein.

### I.   FACTS AND PROCEEDINGS TO DATE

On or about August 19, 2013, Justin and Anna Pollock ("Plaintiffs" or "Pollocks") entered into a Contract for Sale with D.R. Horton for the purchase of a newly constructed D.R. Horton residence located at 213 Forest Grove Drive in Youngsville, Louisiana.[1]  It is undisputed that the Plaintiffs took possession of their new home on or about September 26, 2013.[2]  Over six years later, on October 16, 2019, the Plaintiffs filed suit alleging, *inter-alia*, window leaks at the residence.[3]  In response to the Plaintiffs' suit, D.R. Horton filed *Peremptory Exceptions of Peremption/Prescription*, which asserted that this court should release D.R. Horton from the lawsuit based on well-established peremptory periods set forth in the Louisiana New Home Warranty Act ("LNHWA"), the exclusive legal remedy of a new homebuyer against a homebuilder in the State of Louisiana.[4][5]

2.

After D.R. Horton filed its *Peremptory Exceptions of Peremption/Prescription*, the Plaintiffs' counsel requested leave of court (which D.R. Horton did not oppose) and amended the petition.[6]  In the Plaintiffs' *First Amending Petition*, the Plaintiffs in fact admitted that all their claims would be perempted/prescribed under the LNHWA, yet this time conveniently alleged

---

[1] Exhibit A – *Contract for Sale.*
[2] Exhibit B – *Plaintiffs' Petition for Damages.*
[3] *Id.*
[4] Exhibit C – *D.R. Horton's Peremptory Exception(s) of Prescription/Peremption to Pollocks' Petition for Damages.*
[5] La. R.S. 9:3141 (et seq.).
[6] Exhibit D – *Plaintiffs' First Amending Petition.*

that a "new oral contract" was formed by employees of D.R. Horton during a warranty inspection at the Plaintiffs' residence.[7]

3.

On March 9, 2020, D.R. Horton filed its *Peremptory Exception(s) of Prescription/Peremption* as to the Pollocks' *First Amending Petition* expressly denying the existence of any "new oral contract" and again citing the LNHWA as the Plaintiffs exclusive remedy related to their claims.[8] At a hearing on September 21, 2020, this court denied *D.R. Horton's Peremptory Exceptions of Peremption/Prescription*.[9] In this hearing, this courts stated denial of *D.R. Horton's Peremptory Exception(s) of Prescription/Peremption* was based on its desire to *later* determine if the warranty repairs attempted after the Plaintiffs moved into the home somehow extended D.R. Horton's warranty obligations under the law.[10]

4.

On October 8, 2020, D.R. Horton filed a *Peremptive Exception of No Cause of Action and Dilatory Exception of Prematurity* related to the Plaintiffs failure to arbitrate the warranty disputes as required in the Contract.[11] At D.R. Horton's December 7, 2020 hearing on its *Exception of No Cause of Action and Dilatory Exception of Prematurity*, the undersigned counsel was summoned to Judge Earles Chambers and asked to argue its exceptions. Without concluding that, in fact, there was a "new oral contract"—a fact issue—Judge Earles simply denied *D.R. Horton's Exception of No Cause of Action and Dilatory Exception of Prematurity*.[12]

5.

Thereafter, D.R. Horton filed its *Answer and Affirmative Defenses* to the Plaintiffs' *First Amending Petition*, asserting several affirmative defenses relating to factual issues for determination at trial. On December 22, 2020, the Plaintiffs filed a *Motion to Strike* Paragraphs 1, 2, and 3 of D.R. Horton's *Affirmative Defenses*, or *peremption/prescription, no cause of*

---

[7] *Id.*

[8] Exhibit E - *D.R. Horton's Peremptory Exception(s) of Prescription/Peremption to Pollocks' First Amending Petition*.

[9] Exhibit F - 15th JDC Judgment on *D.R. Horton's Peremptory Exception(s) of Prescription/Peremption to Pollocks' First Amending Petition*.

[10] Exhibit G – (*see page 7:* Transcript from 15th JDC Judgment on *D.R. Horton's Peremptory Exception(s) of Prescription/Peremption to Pollocks' First Amending Petition* – Judge Earles; "But I am going to deny your exception of prescription finding that the ongoing attempts are extended here. And if that's legally right, we'll see.").

[11] Exhibit H - *D.R. Horton's Exception of No Cause of Action and Dilatory Exception of Prematurity*.

[12] Exhibit I - 15th JDC denial of *D.R. Horton's Exception of No Cause of Action and Dilatory Exception of Prematurity*.

action, and prematurity.[13]  D.R. Horton herein opposes the Plaintiffs' *Motion to Strike* because there has been no, and there can be no, factual determination by this court as to the existence of a "new oral contract" in either of the aforementioned exceptions hearings.  Therefore, *D.R. Horton's Affirmative Defenses* of peremption/prescription, no cause of action, and prematurity remain viable defenses to the Plaintiffs claims in their *Petition for Damages* and *First Amended Petition for Damages*.  This factual issues must be submitted for determination by the jury at trial and after evidence has been presented.  As such, this court should not strike D.R. Horton affirmative defenses pled in Paragraphs 1, 2, and 3 of its *Answer and Affirmative Defenses*.

## II. LAW AND ARGUMENT

A.   **The "law of the case doctrine" cannot be used to strike D.R. Horton's affirmative defenses of peremption/prescription because the trial judge did not make a finding as to the factual existence of a "new oral contract" in any hearings to date.**

The law of the case principle relates to (a) the binding force of a trial judge's rulings during later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case.[14]  The law of the case principle is merely a discretionary guide, however.  Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling.[15]  But in cases of palpable error or where, if law of the case were applied, manifest injustice would occur, the principle will not be followed.[16]

In the instant case, this court's denial of *D.R. Horton's Peremptory Exceptions of Peremption/Prescription* was not based on any evidence presented or any conclusive finding of a "new oral contract", but rather the desire by this court to hear at trial whether some new contract had been formed.  In the September 21, 2020 hearing, without any evidence being allowed to be presented as had been requested by D.R. Horton, Your Honor informed the parties in his ruling: "I am going to deny your exception of prescription finding that the ongoing attempts are extended here.  And if that's legally right, we'll see."  By stating "we'll see," Your Honor clearly intended to simply deny *D.R. Horton's Peremptory Exceptions of Peremption/Prescription* and allow the facts of the case to be presented at trial.  Again, no witnesses or other evidence were

[13] Exhibit J – *Plaintiffs Motion to Strike*.
[14] *Glenwood Hosp., Inc. v. La. Hosp. Serv., Inc.*, 419 So.2d 1269, 1271 (La. App. 1 Cir. 1982).
[15] *Id.*
[16] *Id.*

presented by the Plaintiffs, nor was any testimony heard during this hearing, which further confirms this court did not and should not preclude the presentation of evidence on this issue at trial. As such, D.R. Horton would suffer manifest injustice if its affirmative defense of peremption/prescription were stricken before this court can make a factual determination from actual evidence as to the existence of "new oral contract". To that end, D.R. Horton requests that this court deny Plaintiffs' *Motion to Strike* its affirmative defense of peremption/prescription (Paragraph 3).[17]

> **B.**   **Since a factual finding as to the existence of a "new oral contract" is required to circumvent arbitration under the Contract, D.R. Horton's affirmative defenses of no cause of action and prematurity should not be struck.**

An objection to any party's failure to comply with a binding arbitration clause may be raised either by a dilatory exception of prematurity or a peremptory exception of no cause of action.[18] The objection may be raised by "an exception of no cause of action (a peremptory exception which can be pleaded at any time), because the party has no cause of action at law when the contract expressly required settlement of contractual controversies and claims by arbitration,".[19]

At the hearing on D.R. Horton's subject Exceptions on December 7, 2020, the Plaintiffs' attorney, Lance Beal, arranged for a status conference in Your Honor's chambers, without any consultation or consent of undersigned counsel. Counsel for D.R. Horton was summoned out of the courtroom and into Your Honor's chambers by Mr. Beal. In this conference, Your Honor asked counsel for D.R. Horton to make its argument. D.R. Horton argued that the warranty claims in dispute are inescapably tied to the construction of the home; thus the arbitration clause in the Contract should be enforced. Your Honor then summarily denied D.R. Horton's Exceptions in chambers without citing any legal or factual finding, and the parties put the ruling on the record in open court.[20] D.R. Horton has filed a Supervisory Writ related to the aforementioned ruling contending that the allegations of defects asserted by the Plaintiffs—at least some—relate to the Contract, - i.e., requiring the

---

[17] Exhibit K - *D.R. Horton's Answer and Affirmative Defenses.*
[18] *Matthews-McCracken Rutland Corp. v. City of Plaquemine,* 414 So.2d 756 (La. 1982).
[19] *Id.*
[20] Exhibit I - 15th Judicial District Court denial of D.R. Horton Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity.

5594012.1

parties to arbitrate before litigation.[21]

Notwithstanding the pending Supervisory Writ on the matter of arbitration, if the Plaintiffs cannot establish at trial that a "new oral contract" was somehow formed between D.R. Horton and themselves, which is their burden, the Plaintiffs' claims will necessarily be prescribed, they would have been premature, and they will be found to have no cause of action under the LNHWA. Moreover, if even a single claim by the Plaintiffs is found at trial to relate to the original Contract, the Plaintiffs' would have no cause of action on such claims and such claims would have been premature since the Plaintiffs have not properly submitted them to arbitration. There is simply no evidence in the record, or that was even allowed to be presented—by either side—to justify a factual finding sufficient to strike D.R. Horton's reserved affirmative defenses of *prescription/peremption, no cause of action* and *prematurity*. As such, D.R. Horton will suffer a manifest injustice should its affirmative defenses of no cause of action and prematurity be stricken without the Plaintiffs being forced to meet their burden to first prove the existence of a "new oral contract". Considering the foregoing, D.R. Horton requests that this court deny Plaintiffs' *Motion to Strike* its affirmative defenses of no cause of action and prematurity (Paragraph 1 and 2).[22]

**WHEREFORE**, Defendant, D.R. Horton, Inc. – Gulf Coast, respectfully requests that the court deny the *Plaintiffs' Motion to Strike Paragraphs 1, 2, and 3 of D.R. Horton, Inc. - Gulf Coast's Affirmative Defenses* and that all costs related to same be taxed against the Plaintiffs.

Respectfully submitted,

**LAPEROUSE, APLC**

By: /s/ Christopher M. Patin
Edward J. Laperouse, II #29310
Trenton Bull #37577
Christopher M. Patin #37963
8034 Jefferson Hwy.
Baton Rouge, La. 70809
Telephone: (225) 416-0614
Facsimile: (225) 341-8941

**Attorneys for
D.R. Horton, Inc. - Gulf Coast**

---

[21] Exhibit L - D.R. Horton's Supervisory Writ - Exception of No Cause of Action and Dilatory Exception of Prematurity.
[22] Exhibit K - D.R. Horton's Answer and Affirmative Defenses.

559402.1                                    5

Lafayette Parish
Filed Jan 11, 2021 3:25 PM    C-20198583
Abby Brinkman                        J
Deputy Clerk of Court
E-File Received Jan 11, 2021 2:54 PM

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that the foregoing pleading has been served upon the following counsel of record via facsimile, first class U.S. mail (properly addressed and prepaid), or electronic mail to:

Mr. Lance Beal
Beal & Hernandez
Attorneys at Law
600 Jefferson Street, Suite 810
Lafayette, LA 70501
*Attorney for Plaintiffs*

Baton Rouge, Louisiana, this 11th day of January, 2021.

/s/ Christopher M. Patin
**Christopher M. Patin**

559402.1

6

4/14/2021

| JUSTIN AND ANNA POLLOCK | * | 15TH JUDICIAL DISTRICT |
|---|---|---|
| VERSUS | * | DOCKET NO. 2019-6583J |
| D.R. HORTON, INC. – GULF COAST | * | LAFAYETTE PARISH, LOUISIANA |

### RULE TO SHOW CAUSE

Considering the above and foregoing Motion to Strike:

**IT IS HEREBY ORDERED** that the Defendant, D.R. Horton, Inc.-Gulf Coast show cause on the ___19th___ day of ___JAN___, ___2021___ at ___10:00___ o'clock, _a_.m. why the above and foregoing Motion to Strike shall not be granted by this Honorable Court:

**THUS DONE AND SIGNED** this ___ day of ___, ___ in Lafayette, Louisiana.

SIGNED IN LAFAYETTE, LOUISIANA ON 12/23/2020.

JUDGE KRISTIAN EARLES- 15TH JUDICIAL DISTRICT

ANDRE DOUCET, COMMISSIONER
15TH JUDICIAL DISTRICT COURT

**PLEASE SERVE:**
Christopher M. Patin
Attorney of Record for
D.R. Horton, Inc.-Gulf Coast
8034 Jefferson Highway
Baton Rouge, Louisiana 70809

Feb 18 2021 04:18pm    P003/003

JUSTIN POLLOCK, ET AL                          SUIT:   C-20196583              J
VS
D R HORTON INC GULF COAST, ET AL
DATE:        2/18/2021                          JUDGE: EARLES, KRISTIAN

### MINUTES OF THE COURT

Court met this date, pursuant to adjournment with the Honorable Kristian Earles, Judge presiding; Kathy Matthews, Court Reporter; Aaron Oubre, Deputy Sheriff(s); and Monet McCarthy, Deputy Clerk(s) of Court; all being in attendance.

1/19/2021
C-20196583

This matter was previously set for this date to be taken up on Motion to Strike Defendant's Answer and Affirmative Defenses to Plaintiff's Petition and Amended Petition for Damages, filed on behalf of plaintiffs, Justin and Anna Pollock. Present in open court were Lance Beal, representing the movers; and Christopher Patin, representing the defendant, D.R. Horton - Gulf Coast. Mr. Patin objected to the filing of Mr. Beal's Reply Memorandum in Opposition. The Court granted the motion. After hearing oral arguments by and between counsel for the respective parties, the Court granted the Motion to Strike the Exceptions of Prescription, Prematurity and No Cause of Action. A judgment in accordance with the ruling will be signed upon presentation.

Lafayette Parish
Filed Feb 18, 2021 9:16 AM
Abby Brinkman
Deputy Clerk of Court
E-File Received Feb 17, 2021 1:32 PM

C-20196583
J

| | |
|---|---|
| JUSTIN and ANNA POLLOCK | 15TH JUDICIAL DISTRICT COURT |
| versus | DOCKET: 2019-6583 J |
| D.R. HORTON, INC. – GULF COAST | LAFAYETTE, LOUISIANA |

## NOTICE OF INTENT TO APPLY FOR SUPERVISORY WRIT

TO: Honorable Kristian Earles
Judge, Section J
15th Judicial District Court
800 S Buchanan St
Lafayette, LA 70501

NOW INTO COURT, comes, Defendant, D.R. Horton – Gulf Coast ("D.R. Horton"), in accordance with Article 2201 of the Louisiana Code of Civil Procedure and Rule 4 of the Uniform Rules of the Louisiana Courts of Appeal, file this notice of its intent to apply to the Third Circuit Court of Appeal for supervisory writ concerning the ruling rendered in open court by Judge Kristian Earles on January 19, 2021, granting *Plaintiffs' Motion to Strike D.R. Horton, Inc. - Gulf Coast's Paragraphs 1, 2, and 3 of D.R. Horton's Affirmative Defenses.*

Respectfully submitted,

LAPEROUSE, APLC

By: _____
Edward J. Laperouse, II #29310
Trenton Ball #37577
Christopher M. Patin #37963
8034 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 416-0614
Facsimile: (225) 341-8941
ATTORNEYS FOR
D.R. Horton, Inc. - Gulf Coast

Lafayette Parish
Filed Feb 25, 2021 9:55 AM
Hannah Moscovis
Deputy Clerk of Court

C-20196583

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**
P.O. Box 16577
Lake Charles LA 70616
(337) 433-9403

February 23, 2021

Dear Counsel:

The Application for Writs by D.R. Horton, Inc. - Gulf Coast in the case entitled

DOCKET NO.: 21  00126-CW

**JUSTIN AND ANNA POLLOCK**
**VERSUS**
**D.R. HORTON, INC. - GULF COAST**

Writ Application from Lafayette Parish Case No. 2019-6583
Trial Judge: Hon. Kristian Dennis Earles

has been received and filed, as of the hand delivery date of 2/22/21.

Cordially yours,

Renée R. Simien, Clerk of Court

**Mailing List:**
Hon. Kristian Dennis Earles
Edward J. Laperouse, II, Counsel for the Applicant
Trenton C. Ball, Counsel for the Applicant
Christopher M. Patin, Counsel for the Applicant
Lance C. Beal, Counsel for the Respondent
Hon. Louis J. Perret, Clerk of Court

4/14/2021

Lafayette Parish
Filed Mar 18, 2021 4:24 PM   C-20196583
Simone Vaughan
Deputy Clerk of Court

| | |
|---|---|
| JUSTIN and ANNA POLLOCK | FIFTHTENTH JUDICIAL DISTRICT |
| VERSUS | DOCKET NO. |
| D.R. HORTON, INC-GULF COAST | LAFAYETTE, LOUISIANA |

**MOTION FOR LEAVE OF COURT TO FILED SECOND AMENDED PETITION**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, **JUSTIN AND ANNA POLLOCK**, who respectfully move this Honorable Court for leave to amend their original *Petition for Damages* and *First Amending Petition* filed herein on October 16, 2019 and January 27, 2020 respectfully.

1.

The Pollocks have received new evidence that direct implicates D.R. Horton of intentional and, or fraudulent suppression of known structural defects pertaining to D.R. Homes.

**WHEREFORE**, Plaintiffs pray that they be granted leave of court to file a *Second Amended Petition*.

Respectfully Submitted,

Beal & Hernandez, L.L.P.

BY: _____
LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
600 JEFFERSON ST., SUITE 810
TELE: (337)-991-6263
FACSILE: (337)-534-0310
*Attorneys for Justin and Anna Pollock, et al*

**PLEASE SERVE:**
D.R. Horton, Inc.-Gulf Coast
**Through its Attorney of Record**
Laperouse, APLC
2051 Silverside Dr.
Suite 120
Baton Rouge, LA 70808

**NO TRIAL DATE SET**

| JUSTIN AND ANNA POLLOCK | FIFTHTENTH JUDICIAL DISTRICT |
|---|---|
| VERSUS | DOCKET NO. C-2019-6583 "J" |
| D.R. HORTON, INC-GULF COAST | LAFAYETTE, LOUISIANA |

## ORDER

Considering the preceding motion,

IT IS ORDERED that Justin and Anna Pollock are granted leave of Court to file its *Second Amended Petition* and for relief.

In Alternative, ~~a Rule to Show Cause should issue~~ for the _____ day of _____, 2021 at _____. ~~As to why the Pollock's should not be granted~~ leave of Court to file its *Second Amended Petition.*

Lafayette Parish, Louisiana

On this ___18___ day of ___March___ 2021.

_____
HONORABLE JUDGE KRISTIAN EARLES

2/2

Lafayette Parish
Filed Mar 18, 2021 4:24 PM   C-20196583
Gimme Vaughan               J
Deputy Clerk of Court

| JUSTIN AND ANNA POLLOCK | * | 15TH JUDICIAL DISTRICT |
|---|---|---|
| VERSUS | * | C-2019-6583 "J" |
| D.R. HORTON, INC.-GULF COAST | * | PARISH OF LAFAYETTE, LOUISIANA |

SECOND AMENDING PETITION TO THE ORIGINAL PETITION FOR DAMAGES

NOW INTO COURT, through the undersigned counsel come Plaintiffs, JUSTIN and ANNA POLLOCK, INDIVDUALLY, AND ON BEHALF OF THEIR MINOR CHILDREN, SPENCER COLE LANE-FERRARA, SAMANTHA LEIGH POLLOCK, RACHEL OLIVIA POLLOCK, AND OLIVER MATTHEW POLLOCK, married persons of full age of the majority domiciled in Lafayette Parish, who adopting by reference and reiterating all allegations contained in their original petition as though fully reproduced herein with respect to represent and amend their original petition and First Amending Petition with the consent of opposing Counsel as follows:

I.

By supplementing and amending the caption to add Plaintiffs, Justin and Anna Pollock on behalf of their minor children, SPENCER COLE LANE-FERRARA, SAMANTHA LEIGH POLLOCK, RACHEL OLIVIA POLLOCK and OLIVER MATTHEW POLLOCK.

II.

By supplementing and amending the Original *Petition for Damages* and *First Amending Petition* to add paragraphs 72 to 88 to read as follows:

72.

The Defendant suppressed the truth from the Pollocks with intentions to obtain an unjust advantage by fraudulently inducing and influencing the Pollocks to purchase the Defendant's residential home in which is not equipped, designed nor manufactured for the south Louisiana humidity.

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

1 | P a g e
Justin and Anna Pollock vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Second Amending Petition

73.

Notwithstanding a significant history, D.R. Horton induced the Pollocks to purchase a home knowing that same were not constructed nor equipped for the South Louisiana humidity.

74.

The Defendant knew that the models, designs and/or homes being constructed in Louisiana were defective in said regard and proceeded to sell the home to the Pollocks while suppressing the truth.

75.

The Defendant knew the housing structures and designs would cause severe mold and mildew, which is caused by high indoor humidity.

76.

The Defendant admits in its D.R. Horton Homeowner Manual as follows: "Mold growth can be attributed to the following factors:

- Moisture- Water leaks, high humidity"

77.

The D.R. Horton Homeowner Manual further states, "Of these factors, the only component that can be reasonably controlled is moisture. Mold needs moisture to get established, grow, and reproduce. Mold problems and long-standing moisture or high humidity conditions go hand and hand. Eliminate the moisture and additional mold growth is eliminated."

78.

The Pollocks discovered mold growth within the first few months of living in their family home.

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

2 | P a g e
Justin and Anna Pollock vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Second Amending Petition

79.

The Pollocks and their minor children lived and continue to live in a mold infested home which could have been prevented if the Defendant did not conceal that their homes/product cannot withstand the high humidity in south Louisiana.

80.

Defendant's City Manager of Louisiana West Division, Leslie Gulliksen (hereinafter, "Ms. Gulliksen"), has stated and represented: "It is has nothing to do with us. I'll tell you what it is, it's the code that we have to build to. We build to the federal mandate code and we are regulated by federal law, we build in that code and that code was not designed for very humid markets."

81.

Ms. Gulliksen further stated, "We're doing what we are supposed to do by law, but it's not really designed for houses in south Louisiana and now we're trying to figure out if we build to the code that the government requires us to, how do we fix that problem that its causing.

82.

Notwithstanding the Defendant's acknowledgment and admissions that "high humidity conditions go hand and hand with Mold Problems" and that their homes are not designed for the Southern United States, Defendant enticed, induced and fraudulently encouraged the Pollocks to purchase the subject home, and Defendant continues to construct such homes in South Louisiana.

83.

The Defendant continues to perpetuate the fraud by making patchwork remedies and failing to disclose the actual cause and defective structural design.

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

3 | P a g e
Justin and Anna Pollock vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Second Amending Petition

84.

The Pollock home continues to suffer from damage including but not limited to mold and mildew growth as a direct result from defective structural integrity and design; knowledge of which the Defendant fraudulently withheld prior to the execution of the purchase agreement.

85.

The Pollocks have mold growth throughout their home from the Defendant's fraudulent inducement and suppression of knowing its homes cannot withstand high humidity including but not limited to:

1) Mold forming in and on the walls;

2) Mold growth forming on the HVAC vents; and

3) Mold growth on ceiling;

4) Mold around windows; and

5) Mold around vents;

86.

The Defendant could have prevented this inconvenience, damage and loss, etc. to the Pollocks by providing truthful information about the houses they build; instead, the Defendant suppressed the truth from the Pollocks causing damages as alleged herein a severe amount of inconvenience to both the Pollocks and their minor children.

87.

D.R. Horton conduct directly resulted in not only damages to the Pollock's home but damages as follows to the Pollocks and their minor children:

1) Loss of Enjoyment of Life;

2) Mental Anguish;

3) Loss of Consortium;

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

4 | P a g e
Justin and Anna Pollock vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Second Amending Petition

4) Pain and Suffering;

5) Medical expenses;

6) Loss of affection and companionship; and

7) Past and Future medicals

88.

Due to the fraudulent conduct and the improper design, the Pollocks home suffers from irreparable damage including but not limited to the structure, stigma and diminution and fair market value.

iii.

By amending the Prayer of the Original *Petition for Damages* and *The First Amending Petition* filed herein to read as follows:

**WHEREFORE,** the Pollocks adopt by reference and confirm all of the allegations contained in their original *Petition for Damages* and *First Amending Petition* as though fully reproduced herein, do further pray that D.R. Horton, Inc.-Gulf Coast be served with a copy of the foregoing amended petition and after all proceedings had that there be judgment herein favor of the Pollocks and their minor children and against the Defendants, rescinding rescission of the contract and awarding damages including replacement and repairing the defects in the home as well as all other damages as may be determined at trial, all cost of these proceedings including plaintiff's reasonable attorney fees.

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

5 | P a g e
Justin and Anna Pollock vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
Second Amending Petition

5/6

Respectfully Submitted,

Beal & Hernandez, L.L.P.

BY: _____
LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
600 JEFFERSON ST., SUITE 810
TELE: (337)-991-6263
FACSIILE: (337)-534-0310
*Attorneys for Justin and Anna Pollock, et al*

**PLEASE SERVE:**
D.R. Horton, Inc.-Gulf Coast
**Through its Attorney of Record**
Laperouse, APLC
2051 Silverside Dr.
Suite 120
Baton Rouge, LA 70808

Beal & Hernandez
600 Jefferson Street, Suite 810
Lafayette, LA 70501

6 | P a g e
Justin and Anna Pollock vs. D.R. Horton, Inc.-Gulf Coast
15th Judicial District Court, Parish of Lafayette
*Second Amending Petition*

6/6

Lafayette Parish
Filed Mar 16, 2021 4:24 PM    C-20196583
Simone Vaughan    J
Deputy Clerk of Court

| | |
|---|---|
| JUSTIN AND ANNA POLLOCK | FIFTHTENTH JUDICIAL DISTRICT |
| VERSUS | DOCKET NO. C-2019-6583 "J" |
| D.R. HORTON, INC-GULF COAST | LAFAYETTE, LOUISIANA |

## VERIFICATION

STATE OF LOUISIANA

PARISH OF LAFAYETTE

BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and

qualified in and for the abovenamed state and parish, personally came and appeared:

### JUSTIN POLLOCK

Who after being first duly sworn, did depose and declare that:

He is a Petitioner in the above and foregoing *Second Amending Petition*; that he has read

all of the allegations contained therein and declares and states that they are true to the best of his

knowledge, information and belief.

JUSTIN POLLOCK

SWORN TO AND SUBSCRIBED before me, Notary, on this the ___16___ day of

__March__, 2021, at Lafayette, Lafayette Parish, Louisiana.

NOTARY PUBLIC
LAFAYETTE PARISH, LOUISIANA

Lance C. Beal
State of Louisiana
Parish of Lafayette
Notary ID #156656
Bar Roll #38131
My Commission expires with life

Lafayette Parish
Filed Mar 23, 2021 12:38 PM   C-20196583
Kireston Batiste
Deputy Clerk of Court

| JUSTIN AND ANNA POLLOCK ET AL. | * | NUMBER: C-2019-6583 SEC. J |
|---|---|---|
| | * | |
| VERSUS | * | 15TH JUDICIAL DISTRICT |
| | * | PARISH OF LAFAYETTE |
| D.R. HORTON, INC.-GULF COAST | * | STATE OF LOUISIANA |

## MOTION TO ENROLL CO-COUNSEL

NOW INTO COURT, through undersigned counsel, comes the plaintiffs JUSTIN and ANNA POLLOCK, who moves this court to enroll as co-counsel Lewis O. Unglesby (#12498), Lance C. Unglesby (#29690), and Jordan L. Bollinger (#35663) of the Unglesby Law Firm, and Yul D. Lorio (#20275).

WHEREFORE, plaintiff prays that this court enroll the Lewis O. Unglesby, Lance C. Unglesby, Jordan L. Bollinger, and Yul Lorio as co-counsel for Plaintiffs.

RESPECTFULLY SUBMITTED,

BEAL & HERNANDEZ, L.L.P.

BY:

LANCE C. BEAL (#38131)
MATTHEW H. HERNANDEZ (#38545)
ALAN P. HANEY (#31187)
MORGAN E. GUILLORY (#39575)
600 JEFFERSON ST., SUITE 810
TELE: (337)-991-6263
FACSIILE: (337)-534-0310
*Attorneys for Justin and Anna Pollock, et al*

**STAMPED COPY GIVEN**
**NO TRIAL DATE SET**

| | | |
|---|---|---|
| JUSTIN AND ANNA POLLOCK ET AL., | * | NUMBER: C-2019-6583 SEC. J |
| VERSUS | * | 15TH JUDICIAL DISTRICT |
| | * | PARISH OF LAFAYETTE |
| D.R. HORTON, INC.-GULF COAST | * | STATE OF LOUISIANA |

### ORDER

Considering the above and foregoing Motion to Enroll Co-Counsel:

IT IS HEREBY ORDERED, that Lewis O. Unglesby (#12498), Lance C. Unglesby (#29690), and Jordan L. Bollinger (#35663) of the Unglesby Law Firm, and Yul D. Lorio (#20275) be enrolled as co-counsel for plaintiffs in these proceedings.

Lafayette, Louisiana this _____ day of _____ 2021.

SIGNED IN LAFAYETTE, LOUISIANA ON 3/23/2021.

ANDRE' DOGUET, COMMISSIONER
15TH JUDICIAL DISTRICT COURT

HON. KRISTIAN EARLES
JUDGE, 15th JUDICIAL DISTRICT COURT

ALONG WITH MOTION
STATE OF LOUISIANA PARISH OF LAFAYETTE

I HEREBY CERTIFY THAT A CERTIFIED COPY
OF THIS ORDER HAS BEEN
MAILED/SERVED ON ALL PARTIES THIS
March 24, 2021

Shonda Bourliea

DEPUTY CLERK OF COURT
CC: LANCE BEAL
    CHRISTOPHER M. PATIN
    LEWIS O. UNGLESBY
    YUL D. LORIO